HENYAN et al. v. TREVINO et al. †

(Court of Civil Appeals of Texas. San Antonio. April 19, 1911. On Motion for Rehearing, May 17, 1911.)

1. TENANCY IN COMMON (§ 38*)—PLEADING—REQUISITES.

In a suit by several upon equitable grounds to establish a tenancy in common with defendant, who was employed to protect their lands in severalty, it was unnecessary to aver and establish the specific interest claimed by each plaintiff, as would be required if plaintiffs sued as tenants in common.

[Ed. Note.—For other cases, see Tenancy in Common, Dec. Dig. § 38.*]

2. TRUSTS (§ 103*)—ATTORNEY AS EQUITABLE TRUSTEE—ESTOPPEL.

An attorney employed to enforce interests in land for a share of the recovery, and who, as such attorney, has acquired the legal title to the lands, is estopped to deny his clients' title and his trusteeship for their benefit.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 154; Dec. Dig. § 103.*]

3. TRUSTS (§ 103*)—CONSTRUCTIVE TRUST.

An attorney, having acquired land under a compromise in a suit in which he was employed to enforce interests for a share of the recovery, cannot repudiate a promise that the clients should have part of the land so acquired, and leave them merely to their remedy for breach of contract.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 154; Dec. Dig. § 103.*]

4. TRUSTS (§ 103*)—ATTORNEY AS CLIENT'S TRUSTEE.

An attorney employed to enforce interests in land for a share of the recovery could not defeat their rights to interests in the land acquired by him under a compromise by procuring the legal title to be vested in another.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 154; Dec. Dig. § 103.*]

5. TRUSTS (§§ 17, 18*)—PAROL TRUSTS.

A parol agreement to acquire and hold lands in trust for another is not within the statute of frauds.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 15–24; Dec. Dig. §§ 17, 18.*]

6. TRUSTS (§ 103*)—ATTORNEY AS CLIENT'S TRUSTEE.

Equity will compel an attorney to convey to his clients lands to which they have acquired equitable title under his dealings in their behalf.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 154; Dec. Dig. § 103.*]

7. TENANCY IN COMMON (§ 38*) — SUIT TO ESTABLISH COTENANCY—JUDGMENT.

In a suit by several to establish a cotenancy in land to which defendant acquired the legal title under a compromise in a suit in which he was employed by them under a contract for one-half of the recovery, failure of some of the plaintiffs to establish interests did not affect the right of the successful plaintiffs to a joint one-half interest.

[Ed. Note.—For other cases, see Tenancy in Common, Dec. Dig. § 38.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Application for writ of error pending in Supreme Court.

**8. TRUSTS (§ 91*)—TRUSTS IN INVITUM—REQUISITES.**

Trusts in invitum do not depend upon agreement or expressions of the trustee; they arise from sound equitable principles.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 139; Dec. Dig. § 91.*]

**9. TENANCY IN COMMON (§ 30*)—PAYMENT OF TAXES—INUREMENT OF BENEFIT.**

One's redemption of land at a tax sale inures to the benefit of his equitable cotenants.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 95, 96, 98, 99; Dec. Dig. § 30.*]

**10. PRINCIPAL AND AGENT (§ 69*)—DISABILITIES OF AGENT.**

In equity an agent is disabled from dealing with the subject-matter on his own account.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 130, 145; Dec. Dig. § 69.*]

**11. TRUSTS (§ 103*) — EQUITABLE TRUSTS — REQUISITES.**

To establish an equitable trust in land acquired under compromise of a suit in which plaintiffs were parties, it was unnecessary that the other party to the suit, in agreeing to the compromise, understood that the land would be charged with the trust.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 154; Dec. Dig. § 103.*]

**12. TRUSTS (§ 103*)—ATTORNEY AS CLIENT'S TRUSTEE.**

In a suit to establish a trust in land which defendant acquired as plaintiffs' attorney under an agreement for an equal division of the recovery, it was unnecessary for plaintiffs to show damages were sustained by them through defendant's breach of the agreement.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 154; Dec. Dig. § 103.*]

**13. TRUSTS (§ 107*)—ATTORNEY AS CLIENT'S TRUSTEE.**

An attorney who has acquired the subject-matter of a suit in which he is employed has the burden to establish good faith, in a suit by his client to declare a trust.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 157; Dec. Dig. § 107.*]

**14. ATTORNEY AND CLIENT (§ 125*)—SALE—PURCHASE—ATTORNEY AS CLIENT'S TRUSTEE.**

An attorney cannot divest himself of a trust for his client's benefit in land acquired as attorney by purchasing the land at a tax sale.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 250–263; Dec. Dig. § 125.*]

**15. TRIAL (§ 370*) — EQUITY PRACTICE—SUBMISSION OF ISSUES.**

On request of plaintiffs, a suit in equity was properly submitted to the jury on special issues.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 881; Dec. Dig. § 370.*]

**16. TRUSTS (§ 366*)—UNNECESSARY PARTIES.**

In a suit to establish a trust in city land acquired by defendant as plaintiffs' attorney, the city was not a necessary party, though defendant had dedicated part of the land as streets and alleys, plaintiffs ratifying the dedication, nor was the owner of a street railway built along such streets a necessary party.

[Ed. Note.—For other cases, see Trusts, Dec. Dig. § 366.*]

**17. TRESPASS TO TRY TITLE (§ 35*)—ISSUES—PUBLIC EASEMENTS.**

A public easement in land which is the subject of litigation between individual parties is not involved in the suit, unless expressly brought into it by the parties.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 50–52; Dec. Dig. § 35.*]

**18. TRUSTS (§ 366*)—SUIT TO ESTABLISH—UNNECESSARY PARTIES.**

In a suit to establish a trust in land which defendant acquired as plaintiffs' attorney, one to whom defendant had sold part of the land as so acquired was not a necessary party, where plaintiffs claimed no interest in that part, charging it to defendant's share of the whole tract.

[Ed. Note.—For other cases, see Trusts, Dec. Dig. § 366.*]

**19. APPEAL AND ERROR (§ 213*)—FAILURE TO PRESENT QUESTION BELOW — SUBMISSION OF ISSUES.**

Defendants in equity cannot complain of failure to submit certain issues along with others, where they did not request such submission.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 1305; Dec. Dig. § 213.*]

**20. TRIAL (§ 370*)—SUBMISSION OF ISSUES—SCOPE.**

On submitting issues in an equity case, only such matters of fact as in some way tend to establish or defeat a cause of action need be submitted.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 881; Dec. Dig. § 370.*]

**21. APPEAL AND ERROR (§ 1062*)—REVIEW—SUBMISSION OF ISSUES.**

In equity, where plaintiffs' pleadings present several theories on either of which, if established, they are entitled to recover, and it is manifest from the undisputed facts and such as are embraced in the verdict that the judgment rendered was had upon one of the several theories, which is fully sustained by the facts, the failure of the court to submit issues which pertain only to the other theory affords no ground for the reversal of such judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4212–4218; Dec. Dig. § 1062.*]

**22. TRUSTS (§ 103*)—ATTORNEY AS CLIENT'S TRUSTEE.**

In a suit to establish a trust in land acquired by defendant under a compromise as plaintiffs' attorney, it is immaterial whether plaintiffs claimed in the compromised suit by limitations or otherwise.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 154; Dec. Dig. § 103.*]

**23. TRUSTS (§ 374*)—DECREE—PROPRIETY.**

On declaring a trust in land acquired by defendant as plaintiffs' attorney under an agreement for an equal division of the recovery, it was proper to decree partition between defendant and plaintiffs, where the interests of the parties were established and subject to admeasurement.

[Ed. Note.—For other cases, see Trusts, Dec. Dig. § 374.*]

**24. PARTITION (§ 92*)—VALUE — ASCERTAINMENT.**

On decreeing partition of land one-half of which defendant was declared to hold in trust for plaintiffs, it was not error to authorize the commissioners to consider the value of the property; defendants not having requested submission of value to the jury as an issue.

[Ed. Note.—For other cases, see Partition, Dec. Dig. § 92.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

25. APPEAL AND ERROR (§§ 724, 736, 742*)— ASSIGNMENTS OF ERROR—SUFFICIENCY.

An assignment of error is not reviewable when presented as a proposition in itself, when not followed by a proposition, and when argumentative and containing several separate issues.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2997–3001, 3022, 3028, 3029, 3000; Dec. Dig. §§ 724, 736, 742.*]

26. APPEAL AND ERROR (§ 742*) — ASSIGNMENTS OF ERROR.

An assignment of error not followed by the statement required by Court of Civil Appeals Rule 31 (67 S. W. xvi) will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

27. APPEAL AND ERROR (§ 1053*) — HARMLESS ERROR—ADMISSION OF EVIDENCE.

Appellants cannot complain of the admission of testimony afterwards withdrawn from the jury.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4178–4184; Dec. Dig. § 1053.*]

On Motion for Rehearing.

28. ATTORNEY AND CLIENT (§ 125*) — PAYMENT OF TAXES — RIGHT TO REIMBURSEMENT.

An attorney who has fraudulently attempted to overreach his clients is not entitled to reimbursement for taxes paid under the scheme to defraud.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 250–263; Dec. Dig. § 125.*]

Appeal from District Court, Bexar County; Arthur W. Seeligson, Judge.

Trespass to try title by Felix Trevino and others against I. B. Henyan and another. From the judgment, defendants appeal. Affirmed.

Denman, Franklin & McGown, for appellants. Selig Deutschman, T. H. Ridgeway, and Clark & Bliss, for appellees.

NEILL, J. This suit was brought by Felix Trevino and a number of other parties against I. B. Henyan, individually, and as independent executor of the will of Natividad Garza Martinez, and against Margarita Saldana Martinez, George Martinez, Francisco Saldana, Matea Martinez, and Susana Saldana in trespass to try title to recover certain real property described in plaintiffs' petition and for a partition of the same.

Plaintiffs alleged in their third amended original petition, on which the case was tried, substantially: That on June 4, 1904, and long prior thereto, they and those under whom they claim were in actual possession of and claiming title to a large and valuable tract of land holding possession of different parts thereof, but together occupying and claiming in severalty title to the whole thereof, which tract is described as follows: Lying and being situated within the corporate limits of the city of San Antonio, Bexar county, Tex., being original city lots Nos. 5, 6, and 7, in range 1, district 3, and bounded on the south by Crockett place, on the west by McCullough place, on the north by an alley, and on the east by Rock Quarry Road. That the plaintiff Fabiana Sorola de Gonzales was then occupying the following part of the said tract, viz.: All that portion of a subdivision of said tract made by I. B. Henyan, and said portion so occupied and claimed by said Fabiana Sorola herein described by metes and bounds as follows: "Beginning at the southeast corner of lot No. 8 in new city block 2,964, on the north side of Crockett place; thence north along the dividing line between lots 8 and 9, 75 feet; thence in a northwesterly direction on a straight line to a point on the north line of lot No. 20 of same block midway between its northwest corner and its northeast corner; thence in a southwesterly direction in a straight line to a point on the west line of lot No. 20, 50 feet from its northwest corner, the same being on the east line of what is now known as Gillespie street; thence south along the east line of Gillespie street to the southwest corner of said block 2,964; thence east along the north line of Crockett place to place of beginning." Then follows a description of the different parts of the tract of land first described, occupied and claimed by each of the several plaintiffs on January 4, 1904.

Said petition also alleges:

That the defendant Margarita Saldana Martinez was then occupying and claiming title to all that part of said subdivision made by the said Henyan, more particularly described as follows: "Beginning at the northeast corner of new city block 2,964; thence in a northeasterly direction along the west line of Jones avenue to a point 35 feet from northeast corner of lot No. 6 in new city block 2,998; thence west on a straight line parallel with south line of the alley dividing said new city block 2,998 to a point on the north line of lot No. 2 in said new city block midway between its east and west lines; thence in a straight line in a southwesterly direction to a point on the south line of Washington place and the north line of lot 20 in new city block 2,964 midway between the northeast and northwest corners of said lot; thence on a straight line in a southeasterly direction to a point in lot 9 of new city block 2,964, 20 feet from its west line and 75 feet from its south line; thence on a straight line in a northeasterly direction to the place of beginning."

That T. W. Campbell, receiver of the estate of Arthur P. McNutt, deceased, was also claiming title and possession of the land first described, and that a controversy arose between plaintiffs and the said Campbell, as such receiver, as to who was the rightful owner and entitled to the possession of said land, and suits were instituted by the receiver against Fabiana Sorola, Refugio Lopez,

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

Severo Lopez, now deceased, Petra Arambula, and Victor Quintero for the title and possession of said land in the Forty-Fifth district court of Bexar county, Tex. And that said suits were afterwards consolidated and known as consolidated cause No. 14,662 and styled "T. W. Campbell, Receiver, v. I. B. Henyan, Independent Executor of the Estate of Natividad Garza Martinez, et al." And that said receiver was threatening suit against the rest of plaintiffs herein to recover title and possession of said property, but that no suits were actually filed against any of plaintiffs save those above named.

That prior to and on June 7, 1904, defendant Henyan was a regular practicing attorney in Bexar county, Tex., and has ever since been such. That plaintiffs, and each of them, reposing confidence in the ability and integrity of said defendant, some time prior to said date, employed him to represent them as their attorney in the controversy that had arisen between them and T. W. Campbell as such receiver regarding the title and possession of said property, and to appear in court and represent all and each of them in all suits filed against them by said receiver, and to protect their interest in said property. That Henyan accepted said employment and undertook to represent plaintiffs and each of them in said matters. And that, in pursuance of such employment, he appeared and filed answers for all of plaintiffs who had been sued in all suits that were filed against them by said receiver concerning said property, and especially in said consolidated cause.

That plaintiffs and each of them reposed free and full confidence and faith in I. B. Henyan, believing that he would represent their interest in good faith and with reasonable diligence and would protect them in all their rights. But that he formed a fraudulent design to cheat and defraud all and each of plaintiffs out of their interests in said lands, and that he entered into a conspiracy with the defendants Margarita Saldana Martinez, George Martinez, Francisco Martinez, Matea Martinez, and Susana Saldana for that purpose, and that Henyan and the other defendants confederated together in the matters afterwards alleged in the petition for the purpose of defrauding and cheating plaintiffs out of their interest in said land. But, if plaintiffs are mistaken in the allegations as to such a conspiracy with all the defendants, then they alleged that I. B. Henyan conspired with the said Margarita Saldana Martinez, George Martinez, and Francisco Martinez for the purpose of cheating and defrauding plaintiffs and each of them out of their interests in said land.

That, in pursuance of said conspiracy and fraudulent design, Henyan represented to and advised plaintiffs, who had employed him to enter into a compromise and settlement of the controversy existing between said receiver and plaintiffs regarding the title to and possession of said land, that the question involved in the controversy was doubtful, and there was a possibility of plaintiffs losing the land entirely, unless they entered into a compromise and settlement of the same, and advised plaintiffs who had employed him that it would be to their best interest to settle the matter by a compromise with the receiver, and represented to them that said receiver was willing that all those occupying the land should have a part of the same, which is afterwards described in the petition, and that he (the receiver) would take the other half; and that, if plaintiffs would move off that part proposed to be assigned and taken by the receiver, he would turn over the remainder of the land to plaintiffs to be parceled among them in proportion to their respective interests as occupied and claimed by them in the entire tract. That he, the said Henyan, further represented to and advised plaintiffs who had employed him as their attorney that it would be necessary for all occupying said land to move from all that portion of the tract south of San Pedro place so that it could be cleared and divided among them in such proportion that each would receive his share in accordance with the proposed compromise. That plaintiffs, believing and relying upon said representations of Henyan, were induced thereby to agree upon and enter into such compromise; and that, reposing full faith and confidence in Henyan, believing he would discharge his duty to them and protect their interest in the land, authorized him to make and enter into for them such compromise and agreement. That Henyan then represented to them that it would be to their best interest that the title to all the land they were occupying, which they would secure by such compromise, should be placed in the defendant Margarita Saldana Martinez alone in order that it could be properly distributed among all so that each should receive his proper share; and that plaintiffs, relying upon and believing said representations of Henyan, were induced thereby to agree that the title should be placed in said Margarita Saldana Martinez alone; and each of plaintiffs, under the advice of Henyan, agreed that he would move off of all that part of the land north of San Pedro place until the portion assigned them below San Pedro place could be divided so each one might receive his respective share.

That thereafter, on June 3, 1904, for the purpose of effecting such compromise, the following agreement in writing was entered into: "No. 14,662. T. W. Campbell, Receiver of Estate of Arthur P. McNutt, Deceased, v. I. B. Henyan, Independent Executor of the Estate of Natividad Garza Martinez, Deceased, et al. In District Court, Forty-Fifth Judicial District, Bexar County, Texas. This

memorandum of an agreement between T. W. Campbell, receiver of the estate of Arthur P. McNutt, deceased, plaintiff, and I. B. Henyan, independent executor of the estate of Natividad Garza Martinez, deceased, Fabiano Sorola, Guadalupe Martinez, Francisco Saldana, and his wife, Susana Saldana, Refugio Lopez, and his wife, Candalaria Martinez Lopez, Severo Lopez, and his wife, Leanora Lopez, Petra Arambula, Victor Quintero, and his wife, Lena Arambula Quintero, Margarita Saldana Martinez, George Martinez, Paulina Martinez, Ignacio Martinez, and Matea Martinez, witnesseth: (1) That the defendant Margarita Saldana Martinez will file a disclaimer in this cause as to any right, title, or interest in and to original city lots five (5), six (6), and seven (7), range one (1), district three (3) in the city of San Antonio, Bexar county, Texas, and involved in this suit, except as to that portion which is hereinafter allotted to her; and that as that portion the defendant Margarita Saldana Martinez has at all times since 1866 had peaceable and adverse possession thereof, inclosing, cultivating, using and enjoying the same with her family as her homestead. (2) That each and all of the balance of said defendants will file a disclaimer in this cause to any right, title, or interest in and to original city lots five (5), six (6), and seven (7), range one (1), district three (3), in the city of San Antonio, Bexar county, Texas, involved in this suit. (3) That T. W. Campbell, receiver of the estate of Arthur P. McNutt, deceased, shall have judgment against all of said defendants for the possession of and title to the following described portion of said original city lot, to wit: Beginning at the intersection of the Crockett place (and Gillespie street on the northeast side of Crockett place) and running thence north with the east line of Gillespie street to its intersection with an alley on the north of original city lot number seven (7); thence west with the north line of original city lot number seven (7) to its intersection with McCullough avenue; thence south with the east line of McCullough avenue to the southeast corner of original city lot number five (5); thence east with the north line of Crockett place to the place of beginning as per streets and alleys of the subdivision of said property made by William M. Locke, engineer, in March, 1903, for T. W. Campbell, receiver, and by him dedicated to the public, and a copy of said plat is hereto attached. (4) That said defendant Margarita Saldana Martinez shall have judgment against T. W. Campbell as receiver of the estate of Arthur P. McNutt, deceased, and her codefendants, for the possession of and the title to the following portions of original city lots five (5), six (6), and seven (7), in range one (1), district three (3), in San Antonio, Bexar county, Texas, to wit: Beginning at the intersection of the north line of Crockett place with the Rock Quarry Road at the south east corner of original city lot number five (5); thence west with the north line of Crockett place to its intersection with Gillespie street as platted by said receiver in his subdivision of the original city lots number five (5), six (6), and seven (7), range one (1), district three (3); thence north on the east line of Gillespie street to its intersection with an alley on the north line of original city lot number seven (7); thence east on the south line of said alley to its intersection with the Rock Quarry Road, being the northeast corner of original city lot seven (7); thence south with the west line of the Rock Quarry Road and the east line of original city lots five (5), six (6), and seven (7) to the place of beginning, excepting San Pedro Place street running from east to west between original city lots six (6) and seven (7) as per streets and alleys of the subdivision of said property made by William M. Locke, engineer, in March, 1903, for T. W. Campbell, receiver, except that the subdivision of streets and alleys in the blocks numbered three (3), four (4), and seven (7) shall not be accepted or adopted by the defendant Margarita Saldana Martinez; and as to said blocks the subdivision and the plats shall not be binding on her; otherwise she adopts said subdivision and plat. (5) That T. W. Campbell, as receiver of the estate of Arthur P. McNutt, deceased, will pay all the costs incurred in this consolidated suit. (6) That each and all of said defendants will within thirty (30) days from this date move off of the property above awarded to T. W. Campbell, as receiver, and taking with them all their improvements, except growing crops and fences and these will be removed within sixty (60) days from this date, and they will not locate upon any portion of said original city lots other than that part of original city lot seven (7) lying north of San Pedro and east of Gillespie street. Witness our hands this the 3d day of June, A. D. 1904."

This instrument is signed by Margarita Saldana Martinez, Petra Arambula, George Martinez, Candalaria Lopez, Leanora Lopez, Guadalupe Martinez, Mateo Martinez, Francisco Saldana, Lena Quintero, Refugio Lopez, Severo Lopez, Matea Martinez, Ignacio Martinez, Paula Martinez, Susana Saldana, Victor Quintero, and I. B. Henyan, as independent executor of Natividad G. Martinez, deceased, and is witnessed by I. B. Henyan and W. E. Cox.

The petition then avers: That, though all of plaintiffs did not sign said agreement, nor assent thereto before or at the time it was signed, yet it was represented to them by Henyan that it was made for the benefit of them all, and that each of the plaintiffs was to get his share of the land which was by its terms to be set aside to Margarita Saldana Martinez, and that each, relying upon and believing such representations of Henyan, either signed or assented to the same, either before or after it was signed. That

on June 7, 1904, the said Campbell, as receiver of said estate, and said Henyan caused a judgment to be rendered in said court in accordance with said agreement in said consolidated cause awarding the following described property to the said Margarita Saldana Martinez, to wit: Portion of original lots Nos. 5, 6, and 7, range 1, district 3, in San Antonio, Bexar county Tex., specifically described as follows: "Beginning at the intersection of the north line of Crockett place with Rock Quarry Road at the southeast corner of original city lot No. 5; thence west with the north line of Crockett place to its intersection with Gillespie street as platted by said receiver in his subdivision of original city lots numbers five (5), six (6), and seven (7), range one (1), district three (3); thence north on the east line of Gillespie street to its intersection with an alley on the north of original city lot number seven (7); thence east on the south line of said alley to its intersection with the Rock Quarry Road, being the northeast corner of original city lot seven (7); thence south with the west line of the Rock Quarry Road and the east line of original city lots five (5), six (6), and seven (7) to the place of beginning, excepting San Pedro Place street running from east to west between original city lots six (6) and seven (7) as per streets and alleys of the subdivision of said property made by William Locke, engineer, in March, 1903, for T. W. Campbell, receiver, except that the subdivision of streets and alleys in the blocks numbered three (3), four (4), and seven (7) shall not be accepted or adopted by the defendant Margarita Saldana Martinez; and as to said blocks the subdivision and plats shall not be binding on her; otherwise she adopts said subdivision and plat."

It is then alleged: That, while by the terms of said judgment Margarita Saldana Martinez recovered the title and possession of the land just described as against the receiver and her codefendants in said suit, yet I. B. Henyan, who was the attorney of all the defendants in the case wherein the judgment was rendered, represented to these plaintiffs that said agreement was for the benefit of such as were parties to said suit as well as those who were not parties, to said consolidated cause, and had before said compromise settlement been entered into, advised, and counseled plaintiffs, and each of them, that it would be to their best interest to have the legal title to said land put in the name of Margarita Saldana Martinez, in order that the land could afterwards be divided up among the plaintiffs herein and himself so that each one could get his proper allotment; and that plaintiffs, having implicit confidence in Henyan, and believing that he would not wrong them, assented to said agreement, never for a moment suspecting that he or any other of the defendants would claim that plaintiffs had no interest in said land so set apart to Margarita Saldana Martinez until a short time before filing this suit.

That plaintiffs, who signed said agreement, being ignorant of the English language, signed the same without knowing its legal effect, nor the advantage that might be taken of them through the same to defraud them of their rights in said property; but believed, such belief being induced by the representations of Henyan, that the agreement would effect the compromise and settlement which had been agreed upon, and that each would get his share of the land and have the same set apart to him thereunder. That while some of plaintiffs did not sign the agreement, they assented to the same; that is to say, they assented to the compromise which Henyan represented to them had been made for their benefit and that they were to get the benefit of.

That thereafter the receiver, T. W. Campbell, and I. B. Henyan, for the purpose of consummating the compromise settlement and terminating said litigation, caused to be entered in said consolidated cause, on June 7, 1904, a decree awarding the property hereinafter described to Margarita Saldana Martinez and the remainder of said land to said receiver, which decree is recorded in the minutes of the Forty-Fifth district court of Bexar county. That plaintiffs, in pursuance of said agreement and compromise, all moved off of the land which was awarded to Campbell, receiver, and all that portion south of San Pedro place, which they supposed had been awarded them under said compromise, for the purpose of allowing said portion to be divided so each of them would get his proper share.

That, in pursuance of said fraudulent design and conspiracy, I. B. Henyan, on June 8, 1904, caused to be executed and delivered to him by the said Margarita Saldana Martinez a deed purporting to convey him all the property hereinafter described, which deed is recorded in record of deeds of Bexar county. That plaintiffs were wholly ignorant of the execution of said deed until a short time prior to the institution of this suit and never suspected that Henyan, nor any other defendant, was trying to defraud and cheat them out of their interest until about a month before this suit was filed. That Henyan represented to plaintiffs and each of them that he would be in a situation to have said land divided among them so that each would get his share, and thereby lulled them into refraining from action to protect themselves against his fraudulent conduct; he representing all the time to them that he would carry out the statements and representations to them in good faith.

That plaintiffs and each of them employed Henyan to represent them in said litigation; it being agreed between them that he should have one-half the land he should succeed in having set apart to them in such litigation, and he agreeing that he should

represent them until all matters connected therewith were fully settled and each one's share of land was allotted to him.

That Felix Trevino, Manuel Lopez, S. Lopez, Francisco Esparaz, Guadalupe Ortiz, Fabiana Sorola, Refugia Fonseca, Refugio Lopez, Petra Arambula, Lena Arambula Quintero, Victor Quintero, with other parties, were sued in the Thirty-Seventh district court of Bexar county, Tex., in cause No. 15,394, styled "City of San Antonio v. I. B. Henyan, Independent Executor of Estate of Natividad G. Martinez, Deceased," in which the city of San Antonio recovered a judgment against the plaintiffs above named for the sum of $—— for taxes due on said property hereinbefore described, and for all costs incurred. That Henyan, in discharge of his duties as attorney for said plaintiffs, appeared and represented them in said case; they being defendants therein. That said judgment was rendered in favor of the city in said cause on January 5, 1906. That on February 21, 1906, an order of sale was issued on said judgment and placed in the hands of the sheriff, who lived upon said land and sold the same thereunder on April 3, 1906, at which sale it was bid in by I. B. Henyan for $73.50, and a deed was made to him by the sheriff thereto. That the land so sold and bought in by Henyan was then of the reasonable value of $20,000. That plaintiffs had no notice or knowledge that he had bought the land at such sale for himself until a short time prior to the date of filing this suit. That at the time of entering into said compromise agreement with said receiver, of entering the decree in the consolidated cause, of the execution and delivery of the deed by Margarita Saldana Martinez to defendant Henyan, and of Henyan's purchase of the land at sheriff's sale, Henyan was acting as the attorney for each and all of plaintiffs. Wherefore plaintiffs aver that it should be held that defendant Henyan accepted said conveyances for their benefit as well as for himself, and that he has ever since held said property in trust for them as well as for his own benefit, and that plaintiffs are the rightful owners of one-half thereof, and that it ought to be held that said property was awarded to Margarita Saldana Martinez in said decree and conveyed by her to defendant Henyan for the purpose of being partitioned among them, the said Martinez and Henyan, according to their respective interests therein, the respective interests of plaintiffs in the property so recovered being undetermined at the time, but it was agreed and understood that their respective interests were to be in proportion to the respective portions of the entire tract occupied by them as before alleged.

That some time, on or about August 10, 1908, Henyan began openly claiming title individually to said property, and resubdivided blocks Nos. 2,964, 2,997, and 2,998 and caused a plat of the resubdivision to be filed and placed of record in the office of the county clerk of Bexar county, on December 17, 1908; and that on November 20, 1908, and at divers dates thereafter, he sold and conveyed to N. A. Dawson, in such resubdivisions, the following lots, Nos. 5, 7, 8, 9, 15, 16, and 17, new city block 2,998, executing and delivering said Dawson a general warranty deed to said property, which has been filed and recorded in the deed records of said county, and the grantee is now claiming said lots as an innocent purchaser for value.

That, if plaintiffs are mistaken in their allegations that Henyan was employed by and represented each and all of the plaintiffs in the foregoing matters, and that he made to each and all of them the representations before alleged and so counseled them, then plaintiffs Sorola de Gonzales, joined by her husband, Daniel Gonzales, Refugio Lopez, Leanora Lopez, in her individual capacity and as next friend of the minors Fortunata, Francisco, Juana, Catarino, Severo, and Evangelina Lopez, children of herself and Severo Lopez, deceased, Rafael Olivo, Luz Perez, Petra Arambula, and Lena Quintero, joined by her husband, V. Quintero, affirm all the foregoing alleged facts as applied to them and Severo Lopez, deceased, and refer to and adopt all the foregoing allegations as restricted to them and the said Severo Lopez, deceased, and each of them, without repeating such allegations.

The petition closes with this prayer: "Wherefore plaintiffs pray, the defendants having already been cited and having answered herein, that, upon final hearing hereof, the decree entered in the consolidated cause No. 14,662, entitled 'T. W. Campbell, Receiver of the Estate of Arthur P. McNutt, Deceased, v. I. B. Henyan, Independent Executor of the Will of Natividad G. Martinez et al.,' in the district court of Bexar county for the Forty-Fifth judicial district of Texas and entered in volume 11, at pages 572 to 578 of the minutes of said court in which the property hereinbefore described was awarded to Margarita Saldana Martinez and the deed from the said Margarita Saldana Martinez to the defendant I. B. Henyan, dated June 8, 1904, and recorded in volume 224 at page 166 of the deed records of Bexar county, Tex., and the sheriff's deed to the defendant I. B. Henyan, dated April 4, 1906, and recorded in volume 296 at pages 369 to 371 of the records of deeds of Bexar county, be declared conveyances in trust, and that the said defendant I. B. Henyan be declared to be a trustee as to said land for plaintiffs and himself, and that plaintiffs have judgment divesting out of the said Henyan all right, title, and interest in all of an undivided one-half interest in said land except one-half of such share as would have equitably belonged to the said Margarita Saldana Martinez and vesting the same in plaintiffs, for a partition between them and the said Henyan, and that plaintiffs have their

writ of possession. Plaintiffs further pray that the lots conveyed to N. A. Dawson by the said Henyan be charged to the said Henyan in the partition between them and the said Henyan; and they further pray for such other general and special relief as they may be entitled to under the facts hereinbefore alleged, and for their costs. If plaintiffs should prove mistaken in their allegation that the defendant I. B. Henyan was employed by and represented each and all of the plaintiffs, and if it should be found on the trial that all of the plaintiffs are not entitled to relief, but that some of them are, then each plaintiff herein that may be found to be entitled to relief prays that he be given such general and special relief as such plaintiff may be entitled to under the facts hereinbefore stated, and each plaintiff hereby adopts each and all of the foregoing allegations of fact as if made by such plaintiff alone without repeating said allegations to avoid prolixity."

By his first amended original answer the defendant Henyan interposed a general demurrer, a special demurrer upon the ground that said petition does not set out the interest claimed in the premises sued for by all of the plaintiffs, a plea of not guilty, a general denial, the three, four, and five years statute of limitations, and improvements in good faith. His amended answer also contains special pleas, which are, substantially, as follows:

That prior to the ——— day of ———, 1881, original city lots 5, 6, and 7, in range 1, district 3, in the city of San Antonio, of which the property in controversy formed a part, belonged to one John McNutt in fee simple. That during the year 1881 McNutt died testate devising said property to A. P. McNutt, who at the time was insane, and that no statute of limitation ran against him in favor of any one in actual possession of any portion of said premises, unless such possession began anterior to the death of his testator. That on May 11, 1896 (A. P. McNutt having died on December 5, 1895), a large number of the heirs of said McNutt filed a proceeding in the district court in and for the Forty-Fifth judicial district, Bexar county, Tex., praying for a partition among themselves of the estate of said A. P. McNutt. That, in order to effect the purpose of said suit, a receiver was appointed on January 29, 1903, by an order duly entered in said cause; T. W. Campbell being the receiver so appointed. That, during the pendency of the receivership, the receiver caused said lots to be subdivided into city lots, blocks, streets, and alleys and a plat thereof made by William Locke. That by said subdivision part of the land lies east of Gillespie street and a portion of the same west of said street. That Gillespie street as so extended is practically identical with what is known as the "Old Tobin Road," which ran through said original city lots before mentioned, thus locating a portion of the same east of the Old Tobin Road and a portion west of the same. That, some time during the spring of 1903, this defendant was consulted by said Margarita Saldana Martinez with reference to defending her title to that portion of said premises lying east of the Tobin Road, and represented to him that she had been in possession of the same for such length of time as would give her title thereto as against A. P. McNutt and all his heirs. That defendant had informed himself of about the date of the death of John McNutt, and also at that time had knowledge of A. P. McNutt being insane, and that the statute of limitations would not run against him unless her possession antedated his acquisition of title to this property. That he made careful investigation with reference to the possession of the said Margarita Saldana Martinez, and came to the conclusion that her possession had begun prior to the time of John McNutt's death, and that therefore the statute of limitation began to run before A. P. McNutt acquired title to the property, and that she had title by limitation to the premises situated east of the Old Tobin Road, and accepted employment as her attorney to assert and defend her title; she agreeing as compensation therefor to convey him one-half of all said property.

That thereupon defendant, on May 8, 1903, in pursuance of such employment, brought suit for said Margarita Saldana Martinez in the district court of said judicial district, against said receiver, for the purpose of recovering said premises and adjudging the title thereto in her. That, shortly after he was so consulted by her, he was further consulted by Natividad Garza Martinez, who was in possession of and asserted title to the portion of said original city lot, lying east of the Old Tobin Road, and that upon investigating her claim thereto he concluded that she had gone into possession of said premises anterior to the death of John McNutt, and therefore the statute of limitation had commenced to run in her favor prior to acquisition of title by A. P. McNutt, and that her possession had been such as conferred title to said portion of the premises, and he was thereupon employed by her for the purpose of establishing and protecting her title and interest in the same, and as compensation for his services she agreed to convey him one-half of said portion of the land. That he thereupon filed suit for said Natividad Garza Martinez in the district court of the Fifty-Seventh judicial district on May 8, 1903, against said Campbell, receiver, for the purpose of recovering said portion of the premises and establishing and adjudicating her title thereto. That, during the pendency of said suit, she died testate, devising said portion of the premises to Petra Arambula; the will naming him (Henyan) as independent executor. That he caused her will to be probated and qualified

as independent executor thereunder and, as such executor, made himself a party to said suit. That thereafter T. W. Campbell, receiver, as such, brought suit in the district court of Bexar county in the Fifty-Fifth judicial district, against Francisco Saldana in trespass to try title to recover lot 1, block 4, of a subdivision of said original city lots 5, 6, and 7, which lot sued for was located east of the Old Tobin Road, now Gillespie street. That said Francisco Saldana was neither claiming nor asserting any interest in said lot, but was merely occupying the same as a tenant of his mother, Margarita Saldana Martinez, and in subordination to her title, and that in order to protect her title, with the consent of said Francisco Saldana, defendant appeared and represented him as his attorney for said purpose.

That thereafter the said receiver brought suit in said district court in trespass to try title against Fabiana Sorola, now Fabiana Gonzales, to recover lot 1, block 3, of said subdivision of original city lots 5, 6, and 7, and that Sorola had no interest in the same at that time nor at any time thereafter, so far as defendant is informed, nor claimed any title thereto as against Margarita Saldana Martinez, but occupied the same or a portion thereof as her tenant and in subordination to her title. That, in order to protect the interest of Margarita Saldana Martinez, defendant appeared as attorney for Sorola in said litigation and filed answer. That Sorola had no title to said lot, either as against the heirs of A. P. McNutt or Margarita Saldana Martinez, and was not asserting or claiming any title in the same, and that defendant made such appearance for her for said purpose with her knowledge and consent. That said lot No. 1 is a portion of the subdivision of original city lot lying east of the Old Tobin Road, now Gillespie street. That thereafter the said T. W. Campbell, receiver, as such, brought suit in said district court in trespass to try title against Alberto Garza to recover lot 7 out of block 7 of the subdivision of original city lots 5, 6, and 7, which lot is situated in a portion of said subdivision lying east of Old Tobin Road, now Gillespie street. That Alberto Garza sought to employ this defendant, who, after investigating his title, in good faith came to the conclusion that Alberto Garza had no title to said lot, either as against the heirs of A. P. McNutt or Margarita Saldana Martinez, and therefore declined to act and answer for him in said suit, and never at any time represented him in said suit or in any of the proceedings referred to, and that Alberto Garza, having no title to said lot, attorned to said Campbell and acknowledged his title as receiver of said estate.

That thereafter the said T. W. Campbell, as receiver, brought suit in said district court, in trespass to try title against Severo Lopez to recover lots 6 and 7 out of block 4 of said subdivision of said original city lots 5, 6, and 7, which were situated east of the Old Tobin Road, now Gillespie street. That Severo Lopez neither had nor asserted title to said lots as against either Margarita Saldana Martinez or the heirs of A. P. McNutt, but was in possession of a portion of said lots as a tenant of said Margarita, holding the same in subordination to her title. That, in order to protect her title, defendant, with the consent of Lopez, appeared and filed an answer as his attorney in said suit for said purpose. That thereafter the said T. W. Campbell, as such receiver, brought suit in said district court in trespass to try title against Refugio Lopez to recover lot 2 out of block 4 of said subdivision of said original city lots 5, 6, and 7, which said lot lies east of the Old Tobin Road, now Gillespie street. That the said Lopez was a son-in-law of Margarita Saldana Martinez, and had no title to said lot as against either the heirs of A. P. McNutt or said Margarita, but was in possession of the same as her tenant, holding it in subordination to her title. That in order to protect the interest of Margarita, and with the knowledge and consent of Refugio Lopez, defendant appeared and filed an answer for said Lopez in said suit for said purpose. That thereafter Campbell, as such receiver, brought suit in said district court, in trespass to try title against Guadalupe Martinez to recover lots 8 and 9 of block 3 of a subdivision of said original city lots 5, 6, and 7, which two lots are situated east of the Old Tobin Road, now Gillespie street. That Guadalupe Martinez was a son-in-law of said Margarita Saldana Martinez and had no title to said lots 8 and 9, nor did he assert any title thereto as against the heirs of A. P. McNutt or Margarita Saldana Martinez. That, in order to protect Margarita's interest, defendant, with the knowledge and consent of said Guadalupe Martinez, appeared and filed answer for him in said suit for such purpose.

That thereafter said Campbell, as such receiver, brought suit against Margarita Saldana Martinez in said district court, in trespass to try title to recover lots 1 to 7 in block 4 of said subdivisions of said original city lots 5, 6, and 7, which lots 1 to 7 were situated east of the Old Tobin Road, now Gillespie street. That defendant, as attorney for said Margarita, appeared and made answer in said suit. That thereafter Campbell, as such receiver, brought suit against Natividad Garza Martinez in said district court, in trespass to try title to recover the following portion of the subdivision of said original city lots 5, 6, and 7, viz.: Beginning at the southeast corner of lot 6 in block 5; running thence east across Paschal street and along the south line of lot 1 in block 6, a distance of 25 feet; thence south across Washington place to the north line of lot 7 in block 2; thence west across Paschal

street to the northeast corner of lot 12 in block 1; thence north across Washington place to the southeast corner of lot 6 in block 5, the place of beginning. That the property so described lies west of Old Tobin Road, now Gillespie street, and does not include any portions of lots or blocks in said subdivision, but includes only a portion of Paschal street and Washington place as laid out in said subdivision. That defendant Henyan appeared and filed answer in said suit for Natividad Garza Martinez. That during the pendency of said suit the said Natividad died testate, as hereinbefore averred, having devised all her property to said Petra Arambula, her niece; and that, by amended petition, said receiver made defendant Henyan, as executor of decedent's will, defendant to said suit, and also Petra Arambula, Lena A. Quintero, and her husband, Victor Quintero, parties defendant thereto. That the said Petra Arambula had no title or interest in the property sued for as against Natividad Garza Martinez or the heirs of A. P. McNutt, deceased, except such as she acquired under said will, and asserted no title to either the property involved in said suit or the property involved in the suit by Natividad G. Martinez against said T. W. Campbell, receiver, hereinbefore referred to, except such as she acquired under said will. That the said Lena A. Quintero was a niece of said Natividad Garza Martinez and was living with her upon the property involved in the suit of Campbell, receiver, against the said Natividad Martinez above referred to, and holding such possession in subordination to the former's title, having no title nor asserting any as against Natividad Garza Martinez or the heirs of A. P. McNutt, deceased; and that Victor Quintero was merely a formal party and had no interest in and was asserting no title to the property.

That, when the above-named persons were made parties defendant, defendant, having appeared and answered for himself as executor of the estate of Natividad Garza Martinez, with the knowledge and consent of the other named defendants, filed formal answers for them in order more fully to protect the title of the estate of said Natividad Garza Martinez to said premises; said answers being filed for such purpose. And that defendant, on the death of Natividad Garza Martinez and probating of her will, filed an inventory, in which inventory he set up and described as part of the property of the said estate the part of the original city lots 5, 6, and 7 lying west of the Old Tobin Road, now Gillespie street. That thereafter, in the said suit of Natividad Garza Martinez v. T. W. Campbell, receiver, it being discovered that Refugio Fonseca, Felix Trevino, and Guadalupe Ortiz were in possession of a portion of the land sued for in said suit lying west of the Old Tobin Road, now Gillespie street, who were made parties defendant to said suit by the plaintiff there-

in and appeared and made answer thereon, being represented by the attorney of T. W. Campbell, receiver, for said parties had attorned to the receiver and were his tenants and were not asserting title to said premises as against the heirs of said A. P. McNutt, and the only title that they were asserting against Natividad Garza Martinez was such as they held as tenants of T. W. Campbell, receiver, being the title of the heirs of said McNutt. That defendant never at any time represented as attorney any of the three last-named defendants in said suit, who are plaintiffs in this action. That in the meantime the following named parties had recognized the title of the heirs of A. P. McNutt, deceased, in and to original city lots 5, 6, and 7, and had in fact attorned to said receiver and were asserting no title to any of said premises in themselves; the only title had or held by any of them being that of tenants of said receiver, and it being in fact the title of the heirs of said McNutt, deceased, viz.: Rafael Oliva, Manuel Casas de Ortiz and husband, Guadalupe, Alberto Garza, Sisto Maldanado, Francisco Esparza, and Guadalupe Martinez, who is the father of Pabla Martinez de Villareal, the wife of Catarino Villareal, and is also the father of Ignacio M. and Mateo Martinez, and L. Martinez, her attornment being made by her husband. That defendant Henyan at no time ever represented as attorney any of said named parties in any proceedings before referred to. That matters being in the condition averred, and, it being recognized by all parties that the title to lots 5, 6, and 7 lay wholly in the heirs of A. P. McNutt, deceased, or that the said Margarita Saldana Martinez held title to the portion of the same lying east of said Old Tobin Road, and that all of defendants to said suits brought by Campbell as receiver were merely formal parties defendant, holding in subordination to one or the other of the titles mentioned, the question of compromising the entire litigation came up for consideration between the said Campbell, receiver, and the defendant Henyan, as independent executor of the estate of Natividad Garza Martinez, and Campbell made said defendant a proposition to compromise the said litigation by an adjudication of all the land west of Gillespie street to the said Campbell as receiver and the land lying east of said street to Margarita Saldana Martinez.

That, when this proposition was made, the said Natividad Garza Martinez had died, and, her testimony not having been taken, defendant Henyan, as independent executor of her estate, found that there would be great difficulty in her establishing her title, which was purely by limitation, to any of said property, and that there was a strong probability that said estate might not recover anything in said litigation. That he therefore submitted the said proposition of compromise to Petra Arambula, the sole devisee of Natividad Garza Martinez, and to the various oth-

er persons who subsequently executed the agreement hereinafter referred to for their determination, and that they agreed to accept said compromise; the said Margarita agreeing, as a consideration to said Petra Arambula for entering into said compromise, that she would convey to said Arambula lots 1 and 2 in block 10 on east side of Gillespie street, and pay her $25 in cash, the said Petra Arambula to immediately remove from the premises on the west side of Gillespie street onto said lots, and she did thereafter make such conveyance and pay said money, the agreement, however, so to do not being a part of the agreement compromise subsequently entered into with said Campbell, receiver, hereinafter more fully explained, but being a private agreement between said Petra Arambula and the said Margarita Saldana Martinez. That thereupon a written form of an agreement of compromise was prepared by Campbell, receiver, and delivered to defendant Henyan, which is set out in plaintiffs' petition, and defendant submitted said agreement to Margarita Saldana Martinez and Petra Arambula and to all parties named therein. That thereupon said agreement was signed by all of said parties, duly acknowledged, returned to defendant (Henyan) for delivery to said receiver. That thereupon said Campbell, as receiver of said estate, applied to the court wherein the receivership was pending for authority to enter into said compromise agreement, and such authority was granted him by an order of said court. That, in order to effectuate said agreement, the suits brought by Natividad Garza Martinez against said receiver, to which certain tenants of the said Campbell, as receiver, had subsequently been made parties, was dismissed, and the suit brought by Margarita Saldana Martinez against him was likewise dismissed, and all the remaining suits were consolidated into the suit No. 14,662, entitled "Campbell, Receiver, v. I. B. Henyan, Independent Executor, et al."

That thereupon the disclaimers of the defendants, who by said instrument had agreed to disclaim, were filed in the case with said agreement in accordance therewith, and judgment was duly entered in said consolidated suit in accordance with the terms of said agreement. That, after the entry of the agreed decree, Margarita Saldana, in full compliance with her previous verbal agreement, conveyed to said Petra Arambula said lots 1 and 2 in block 10, and said conveyance was accepted by said Petra Arambula, who paid her the $25 in cash in compliance with said verbal agreement.

Defendant Henyan specially denies that either he or said Margarita ever had any agreement or understanding that any party should have any interest whatsoever awarded and decreed to said Margarita Saldana Martinez for their or either of their interest in said land or any part of the same. And he specially avers: That the parties to said agreement were the only parties thereto. That neither he nor she had any agreement or understanding with any person other than who signed said agreement with reference to the same, or any of its stipulations, or in regard to said adjudication being made on any trust whatsoever for them or either of them. He specially denies that he or she ever made any representations to any such of the parties whatsoever with reference to such agreement or any stipulations therein, or that he or she ever in any way induced any of such other parties to assent to such agreement in any manner whatsoever, and that in truth and in fact said agreement by its terms represents all the agreements that were ever had with reference to the final adjudication of said case and the decreeing of the land adjudged to said Margarita. That, if any trust agreement was had by Margarita with or for any of the plaintiffs herein, he never had any notice or knowledge of the same, and it was made without his consent. That after said final adjudication, he having an interest in the premises awarded to Margarita, by virtue of his employment by her, she proposed to sell to him the whole of said premises, except the portion conveyed by her to Petra Arambula and lots 6, 7, and 8, block 10. That he purchased her interest in said property with said exceptions, paying her a valuable consideration therefor; and that, if any agreement had previously been made by Margarita with any one whereby such an one should recover any portion of said property or any interest therein, defendant had no knowledge thereof when he purchased from her.

That during the progress of the litigation before referred to, and prior to its final disposition, the city of San Antonio had brought suit against the said receiver and others for taxes due on said original city lots 5, 6, and 7, and asked judgment for a foreclosure of the tax lien thereon. That Margarita Saldana Martinez was not made an original party defendant in said suit; but that defendant, as independent executor of the estate of Natividad Garza Martinez, was made a party defendant, and there were a number of other parties defendant, none of whom had any title whatsoever against either the heirs of McNutt, the said Natividad Garza Martinez, or the said Margarita, nor were asserting title in themselves against either of them, and, if in possession of any part of the premises, they held the same in subordination to one or the other of the titles aforesaid. That in order to protect the title of Natividad Garza and Margarita Saldana Martinez, and for that purpose only, defendant may have filed formal answers for some of said formal defendants. That, prior to the final disposition of said tax suit, the said agreed judgment in said consolidated cause was duly entered and made final, and that thereafter the said Margarita made herself a party to said suit claiming the whole of said premises so adjudicated to her in the

consolidated suit, the judgment wherein placed complete title in her to the premises as against all of said formal defendants in said tax suit as well as against the heirs of said McNutt and Petra Arambula. That said formal defendants had no title nor interest, nor were they claiming any in said land, and all appearances and answers made by defendant for any of them was done merely for the purpose of protecting the title of the said Margarita Saldana and Natividad Martinez and the devisee of the latter, with the full knowledge and consent of each and all formal defendants. That said tax suit was prosecuted to judgment, it being recited therein that said premises were owned by Margarita Saldana Martinez. That the tax lien was foreclosed as to all the defendants therein, and a decree to that effect entered, which adjudged that the taxes were due by said Margarita Saldana Martinez and a personal judgment entered against her therefor. That thereafter an order of sale issued on said judgment and the property sold thereunder and bought by defendant Henyan; he having acquired the interest of the said Margarita to the extent hereinbefore averred by purchase from her. That said property was bought in by him for himself, and not in trust for any one else, and he recognized no other title in any one else to any of the property so purchased by him save the title to Petra Arambula to the two lots hereinbefore mentioned and the title of said Margarita to the three lots before described, not conveyed by her to him, and that as to said two lots he had been ready and willing at all times, and is still ready and willing, if necessary, to clear their title, to make a quitclaim conveyance to said parties, respectively. That when he purchased said property he was not representing any of the plaintiffs as their attorney, which they well knew.

That defendant at no time ever represented as attorney any of the parties plaintiff herein, except as before averred and explained. That, immediately after the entry of the judgment in said consolidated cause, all the defendants in said causes either surrendered possession of any portion adjudicated to Campbell, receiver, or were ejected therefrom under proper process issued on said judgment, or had previously attorned to said receiver and continued possession under said attornment, or subsequently attorned to said receiver, and have never in any way disputed his title. That they have at all times acquiesced in said judgment and recognized its force and effect.

That defendant has placed upon said property valuable improvements, as before stated, amounting in the aggregate to $3,000, and has resubdivided the same and placed it upon the market for sale, and made open and public claim of ownership to said premises, and that plaintiffs are estopped from asserting as against his title any secret trust of any character, and, if not estopped from asserting title, they are from a recovery upon any alleged trust in property in any event until they have fully satisfied and paid the defendant all taxes so paid as well as all money expended by defendant for improvements with interest thereon.

That the judgment rendered in said consolidated cause finally adjudicated all matters at issue and fully and finally determined the number of parties thereto who had any interest in or title to any of the property or premises, save and except such persons as by said decree adjudged to have title to the portions thereto as herein averred and is res adjudicata to any and all of the claims of any and all persons who were parties to any of said suits so consolidated and to any and all parties who may have been made parties defendant after said suits were consolidated, and defendant pleads said judgment as res adjudicata of any and all of said matters.

That the judgment of said tax suit fully and finally adjudicated the right of the city to recover therein the taxes for which it recovered judgment and its right to have the lien therefor foreclosed, and finally adjudged that the property therein involved belonged to said Margarita and was subject to such lien, and that the sale thereunder fully and finally passed the title of all the parties in said suits to him as the purchaser thereunder free and clear of any and all claims had thereto which any of the parties to said proceedings may have had thereto and said sale passed full, complete, and perfect title to this defendant against all the parties thereto.

That the tax suit referred to was originally brought against T. W. Campbell, as receiver of the estate of A. P. McNutt, as well as against other defendants, and sought to recover taxes alleged to be due on all of lots 5, 6, and 7. That, during the pendency of said suit, the said Margarita intervened, setting up her separate ownership of the portion of said premises lying east of the Old Tobin Road, now Gillespie street, and in said intervention asked certain affirmative relief against the said Campbell, as receiver; and that he filed his answer to her petition of intervention, disclaiming any right, title, or interest in any of said land lying east of said Old Tobin Road, now Gillespie street. That in the meantime the said Campbell had paid the taxes due upon the property owned by him as receiver lying west of the Old Tobin Road, and had been dismissed from said suit. That the other defendants named in said suit were Henyan, as independent executor of the estate of Natividad Garza Martinez, and the following named parties, who had previously attorned to said Campbell as such receiver, and whatever possession they may have held was as tenants of said Campbell as such receiver, none of them asserting title to any of said property, viz.: Felix Trevino, Sisto Valdamado, Hejinio Amallo, Manuel Martinez, Gumerindo Hoballez or Gumecindo Ovalla, Francisco Esparza, Rafael Ovalla or Habillo, Guadalupe Ortiz,

Refugia Fonseca, Guadalupe Martinez, and Alberto Garza, none of whom were claiming or asserting title to any portion of said original city lots 5, 6, and 7, except in subordination and recognition of the title of either of the heirs of A. P. McNutt, as represented by said receiver, or the said Natividad Garza Martinez, represented by defendant (Henyan) as her independent executor, or of Margarita Saldana Martinez, and the fact that the title to said premises situated east of the Old Tobin Road was in Margarita Saldana Martinez was fully and finally adjudicated as against all the parties thereto, and that the parties to said suits other than those before named, as shown by the pleadings therein, were Manuel Lopez, Severo Lopez, Guadalupe Fonseca, Florencia Flores, Fabiana Sorola, Francisco Saldana, Refugio Lopez, Secard Lopez, Lina Arambula de Quintero, and Victor Quintero; and that defendant Henyan pleads said judgment as res adjudicata against the plaintiffs herein.

That as none of the hereinbefore named defendants had any interest in or title to said property, with the exception aforestated, nor was asserting title thereto, even if defendant had represented any of them as attorney, any previous or subsequent purchase of the property made from the real owners could not and did not create a trust in favor of said parties so purchased by defendant Henyan. But that defendant specially denies that any of plaintiffs herein at any time ever had or claimed any title in themselves in any portion of said original city lots 5, 6, and 7, and that, if they were in possession of any portion of same at any time, such possession was held in subordination to the title of the heirs of McNutt or to the title of Natividad Garza Martinez or the title of Margarita Saldana Martinez, as before averred.

The defendants other than Henyan answered by a general demurrer, a general denial, not guilty, and in them pleaded the matters alleged in Henyan's answer, as above set forth, virtually adopting his answer.

By their first supplemental petition, the plaintiffs interposed a great number of special exceptions, a general denial, and replied to the answer of Henyan by pleading specially, in substance, as follows:

That, long prior to the time when Natividad Garza Martinez entered upon any part of the land, Lino Arambula and his wife, the father and mother of plaintiffs Petra Arambula and Lina Arambula de Quintero, were occupying and claiming title to all that part of original city lots Nos. 5, 6, and 7 above described lying west of the Old Tobin Road. That is now included within the limits of lots 7 and 8 of new city block 2,965, and lots 7, 8, 9, 10, 11, and 12 of new city block No. 2,999 of Campbell's subdivision of said original city lots, being about seven acres. That the said Lino Arambula and wife continuously actually occupied said portion of said original city lots, using, cultivating and enjoying the same for the purpose of a home for a period of 10 years before the said Natividad Garza Martinez ever entered upon any part of said original lots. That plaintiffs Petra Arambula and Lina Arambula de Quintero were reared on said premises. That, upon their mother's death, their father procured Natividad Garza Martinez, who was the stepmother of said plaintiffs' mother, to come and live with his family on said premises and take care of his children. That their father afterwards died, and the said Natividad continued to live there with plaintiffs; and that these facts were well known to defendant I. B. Henyan. That the said Natividad never claimed any part of the land as her own, until after Henyan was employed by a number of the plaintiffs to represent them, as is set forth in their third amended original petition, and he formed the fraudulent design to cheat and defraud plaintiffs as alleged.

That the said Natividad Garza and Margarita Saldana Martinez were each an aged woman, feeble in body and mind, at that time, which facts were known to Henyan, and he concluded that they could be used as tools and instruments in carrying out his said fraudulent designs, and persuaded them to be allowed to be so used. That the said Natividad being in very feeble health, and her death being imminent, he procured her to make a will, which he drafted, making himself her independent executor, for the purpose of carrying out his fraudulent design. That after her death he had the will probated, and qualified under it as independent executor, filed an inventory in which he described all of said original city lots lying west of Old Tobin Road as belonging to her estate. That none of plaintiffs had any knowledge that he had so inventoried said land until just before this suit was filed.

That plaintiff Petra Arambula alleges that it is true that Henyan caused said Margarita Saldana Martinez to convey her the two lots mentioned in the answer of Henyan and paid her $25; but the lots were each 50 by 100 feet and did not approximate the quantity of land she was entitled to under the terms of said settlement set forth in the third amended petition of plaintiffs, and said sum of money did not approximate the value of her real interest in said land. That she was induced to accept said deed conveying said lots to her by the representations made to her by Henyan, who was her attorney, that said lots were all that she was entitled to under the law; that she was ignorant of her legal rights and relied upon and believed such representations, which were false, and fraudulently made by Henyan for the purpose of deceiving and cheating her. That she agrees that the two lots so conveyed to her and the $25 shall be charged against her in the partition which plaintiffs pray for in their petition, and that they and the money

be put in hotchpot, and the entire tract sought to be partitioned, including said two lots and $25, be partitioned as prayed for by plaintiffs.

That it is not true, as alleged in said answer of Henyan, that defendant Margarita Saldana Martinez, at the time the controversy arose between the McNutt heirs and plaintiffs with reference to the title to the lands included within the limits of said original city lots, was claiming title to all parts of them lying east of Old Tobin Road; nor is it true that what is now Gillespie street was such Old Tobin Road; but that what is now known as said street occupies only a part of what was such road. That at the time said controversy arose the said Margarita was actually occupying, using, and claiming title to the following described part of said original city lots, to wit: "All that part of said Henyan subdivision particularly described as follows: Beginning at the northeast corner of new city block 2,964; thence in a northeasterly direction along the west line of Jones avenue to a point 35 feet from the northeast corner of lot 6 in new city block 2,998; thence west on a straight line parallel with the south line of the alley dividing new city block 2,998 to a point on the north line of lot 2 in said block midway between its east and west lines; thence on a straight line in a southwesterly direction to a point in the south line of Washington place and the north line of lot 20 in new city block 2,964 midway between its northeast and northwest corners; thence on a straight line in a southeasterly direction to a point in lot 9, new city block 2,964, 2 feet from its west line and 75 feet from its south line; thence on a straight line to beginning."

That Margarita Saldana Martinez never claimed any part of said land except the tract just described until Henyan procured her to do so for the purpose of carrying out his fraudulent design. That, she being a very aged woman of feeble body and mind, Henyan overreached and defrauded her by falsely representing to her that she would lose all her land unless she did as he desired her, and thereby procured her to be an instrument in his hands to aid him in his attempt to defraud plaintiffs and cheat them out of their land. That plaintiffs had no knowledge nor notice that Margarita was claiming adversely to them or ever claimed adversely to them, until a short time before this suit was filed.

That plaintiffs nor any of them ever attorned to T. W. Campbell, receiver of the estate of A. P. McNutt, or ever were his tenants, except that, after said compromise judgment was rendered as alleged in their amended original petition, such of plaintiffs as remained upon the land which was set apart to said receiver by said judgment acknowledged the title of said receiver and of the McNutt heirs. That neither they nor any of them ever attorned to or became the tenants of said Henyan as to any part of the land in controversy. That, while it is true Refugio Lopez was induced by said Henyan to pay him for a short time $1 per month, he was induced to do so by Henyan representing to him that it was necessary for him to pay a nominal amount in order to show that he (Lopez) recognized Henyan's one-half interest in the land and that such payments were made for that purpose only.

On March 21, 1910, plaintiffs filed what is styled "trial addition to plaintiffs' second amended original petition," which avers, in substance: That if plaintiffs are mistaken in the allegation contained in their amended petition, wherein it is alleged that defendant Henyan represented to plaintiffs, who had employed him, that, if they would consent to the settlement with Campbell between them and him as receiver, Campbell would turn over the balance of the land over and above what he was to get under said settlement to them to be divided among them according to their respective interests as occupied and claimed by them in the entire tract, then they say that the said Henyan represented to them that they and each of them should have a share in said land, stating to them that they would each receive a share without specifying the quantity or out of what particular part of the entire tract such share or lot was to be taken and to others that he should receive his share out of the land occupied by him. To some of the plaintiffs he merely stated and represented that the litigation had been settled without informing them of the nature of the settlement, but represented to them that it would be necessary to move off of the land so that it could be cleared and each could get his or her part. That plaintiffs, who employed Henyan, were each entirely ignorant of their legal rights, and relied implicitly upon his statements and representations, and were thereby induced to move off of the land.

On November 1, 1909, the plaintiffs M. or L. Martinez, Sisto Maldonado, Francisco Esparza, Catarina Villareal, and Pabla Martinez de Villareal appeared by their attorneys and dismissed their cause of action.

On March 18, 1910, Catarina Villareal, Pabla Martinez de Villareal, Sisto Maldonado, Francisco Esparza, and L. Martinez, designating themselves as plaintiffs, filed in this case what is styled a "disclaimer," declaring that they as plaintiffs "do not wish to further prosecute or assert any claim whatever to said property or any part thereof and do hereby disclaim any and all right, title, interests, claims, and demands in and to said property (describing the same); and agree that judgment may be rendered by the court on this disclaimer, and that Margarita Saldana Martinez and her grantees be awarded said lands." It will be noted this so-called "disclaimer" was filed after they had dismissed their suit and before plaintiffs' third amended original petition, on which the

case was tried, in which none of them is named as a party plaintiff.

The case was tried by a jury, to whom the case was submitted at the request of plaintiffs, over protest of the defendants, on special issues, and upon the findings of the jury upon such issues, and upon findings of the court from the undisputed testimony as matters of law, judgment was rendered that all the plaintiffs except Felix Trevino, Luz Perez, Manuel Casas de Ortiz, and Alberto Garza ought to recover, but that said named plaintiffs take nothing.

It was then adjudged and decreed: "That the plaintiffs Lina Quintero and her husband, Victor Quintero, Petra Arambula, Refugia Fonseca, Juanita Tijerina, Fabiana Sorola de Gonzales and her husband, Daniel Gonzales, Manuel Lopez, Refugio Lopez and his wife, Candelaria Lopez de Martinez, Rafael Olivo, Jesusa Ortiz de Maya, Leonor Lopez in her own right and as next friend of the minors, Fortunata Francisco, Juana, Catarino, Severo, and Evangelina Lopez, and Refugio Lopez as next friend of the minor Mateo Lopez, do have and recover of the defendants I. B. Henyan in his individual capacity and in his capacity of independent executor of the will of Natividad Garza Martinez, Margarita Saldana Martinez, George Martinez, and Francisco Saldana, Susana Saldana, and Mateo Martinez, as follows: It is adjudged and decreed by the court that the legal title to the following tract of land, to wit: 'Lying and being situated within the corporate limits of the city of San Antonio in Bexar county, Tex., and being portions of original city lots Nos. 5, 6, and 7, range 1, district 3, and described by metes and bounds as follows, to wit: Beginning at the intersection of the north line of Dewey place (formerly Crockett place) with Jones avenue (formerly known as the Rock Quarry Road); thence west with the north line of said Dewey place to its intersection with Gillespie street as per plat made by William M. Locke for T. W. Campbell, receiver of the estate of Arthur P. McNutt; thence north on the east line of Gillespie street to its intersection with an alley on the north of original city lot No. 7; thence east on the south line of said alley to its intersection with Jones avenue; thence south with the west line of Jones avenue to the place of beginning, which was set apart to Margarita Saldana Martinez by the judgment of the district court of Bexar county in and for the Forty-Fifth judicial district of Texas'—was vested in the said Margarita Saldana Martinez, but that she held said legal title in trust one half for the benefit of the defendant I. B. Henyan, and the other half for the benefit of herself and all the plaintiffs herein except Felix Trevino, Manuel Casas de Ortiz, Alberto Garza, and Luz Perez, the said Margarita Saldana Martinez and the said plaintiffs being beneficially interested in said half in proportion according to the facts found by the jury

and shown by the undisputed testimony as hereinbefore set forth; and that, upon the conveyance by her to the defendant I. B. Henyan of all of the tract except the five lots, the said legal title to the part conveyed to the said Henyan and the legal title to the five lots retained by her remained affected by said trust except that, after said conveyance by her to the said Henyan, she no longer held or owned any beneficial interest in the part conveyed by her to him nor he any beneficial interest in the five lots retained by her. And it is ordered, adjudged, and decreed by the court that the said plaintiffs recover as against the said defendants their respective interests in said entire tract as hereinbefore adjudged and as hereinafter more specifically designated, subject, however, to a charge in favor of the said Henyan of their pro rata parts of the sum of $850, money paid out by the said Henyan in the way of the payment of taxes and in payment for improvements made on said tract which is a charge against all the land conveyed by Margarita Saldana Martinez to I. B. Henyan, with interest on said sum from this date at the rate of 6 per centum per annum."

The court then found that said tract of land is capable of being equitably partitioned in kind, and that, plaintiffs having in open court signified their desire that the land should be partitioned merely as between them on the one side and defendants on the other, it was ordered and decreed that said entire tract be so partitioned, and appointed three certain persons named in the decree to make such partition and report to the next term of court.

The decree directing how the partition should be made is as follows:

"It is ordered, adjudged, and decreed that said entire tract be partitioned as between the said plaintiffs on the one side and the defendants on the other; and A. Y. Walton, T. W. Smith, and Edwin Paschal are hereby appointed commissioners to make partition of said land and report their action to the next term of this court.

"The said commissioners shall make partition of said land in the following manner, to wit: They will consider said entire tract that was set apart to Margarita Saldana Martinez by the judgment of the district court of Bexar county on June 7, 1910, as hereinbefore described, as belonging one-half to the defendant I. B. Henyan, and one-half to the plaintiffs, Lina Quintero, Petra Arambula, Refugia Fonseca, Juanita Tijerina, Fabiana Sorola de Gonzales and her husband, Daniel Gonzales, Manuel Lopez, Refugio Lopez and his wife, Candelaria Lopez de Martinez, Raphael Olivo, Jesusa Ortiz de Maya, Leonor Lopez, the minors, Fortunata, Francisco, Juana, Catarino, Severo, and Evangelina Lopez, Mateo Lopez, and the defendant Margarita Saldana Martinez.

"Said commissioners will go on the ground

and ascertain by actual measurements the respective quantities as near as may be of land that were occupied and claimed by the said Fabiana Sorola de Gonzales and her husband, Daniel Gonzales; Refugio Lopez and Severo Lopez; Raphael Olivo; Petra Arambula and Lina Quintero; Refugia Fonseca; Juanita Tijerina; Jesusa Ortiz de Maya; and Margarita Saldana Martinez—as alleged by plaintiffs in their third amended original petition herein and as found by the jury. That is to say, the said commissioners will ascertain as near as may be the respective quantities of land in said eight tracts, paying no attention to streets or alleys. Said commissioner will then take the aggregate of said quantities of land as the denominator, and the respective quantities composing said aggregate as numerators of fractions, and they will divide each of these fractions by two, and the result will represent the respective interests owned by said parties outside of the said Henyan on the date of said judgment; that is to say the said fractions will be the interests owned in said entire tract by Fabiana Sorola de Gonzales and her husband, Daniel Gonzales, Refugio Lopez, Leonor Lopez, and the minors, Fortunata, Francisco, Juana, Catarino, Severo, and Evangelina Lopez together; Raphael Olivo; Petra Arambula and Lina Quintero together; Refugia Fonseca; Juanita Tijerina; Jesusa Ortiz de Maya; and Margarita Saldana Martinez and the estate of her deceased husband, Pantaleon Martinez, together. And the said commissioners will set forth in their report the said respective interests so ascertained by them. The said commissioners shall consider five-sixths (⅚) of the interest so ascertained by them as belonging to Margarita Saldana Martinez and the estate of her deceased husband, Pantaleon Martinez, as belonging to the said Margarita Saldana Martinez individually on the date of said judgment, one twenty-fourth (1/24) of said interest as belonging to the plaintiff Mateo Martinez, and one-eighth (⅛) as belonging to Candelaria Lopez de Martinez. They will consider as already set apart to Margarita Saldana Martinez the three lots that she retained, and as already set apart to Petra Arambula and Lina Quintero the two lots that were conveyed to Petra Arambula by Margarita Saldana Martinez. The said commissioners will ascertain the respective values of all the lots composing said entire tract as such values now exist, and they will charge to the said Margarita Saldana Martinez the three lots that were retained by her, and to Petra Arambula and Lina Quintero the two lots that were conveyed to Petra Arambula by Margarita Saldana Martinez. After so charging against the said Margarita Saldana Martinez the three lots that were retained by her, should any more be coming to the said Margarita Saldana Martinez, the same shall be considered by said commissioners as belonging to the said I. B. Henyan in addi-

tion to the half interest belonging to him on the date of said judgment as acquired by the said Henyan through the conveyance to him by the said Margarita Saldana Martinez. And the said commissioners will set forth in their report the interest so acquired by the said Henyan from the said Margarita Saldana Martinez through the said conveyance. The said commissioners shall ascertain what interest, if any, in the remaining land is coming to the said Petra Arambula and Lina Quintero after charging against them two lots and set forth the same in their report.

"After estimating the interests of the respective parties as hereinbefore directed, said commissioners will then partition the land that was conveyed by Margarita Saldana Martinez to the said I. B. Henyan, on the one side, and the plaintiffs Fabiana Sorola de Gonzales and her husband, Daniel Gonzales, Refugio Lopez, Leonor Lopez, the minors, Fortunata, Francisco, Juana, Catarino, Severo, and Evangelina Lopez, Raphael Olivo, Petra Arambula, Lina Quintero, Refugia Fonseca, Juanita Tijerina, Jesusa Ortiz de Maya, and Mateo Martinez, on the other side, in the following manner, to wit: They will set apart according to value to the said Henyan lots equal in value to one-half of said tract that was conveyed to him by Margarita Saldana, and also the interest acquired by him from Margarita Saldana Martinez through said conveyance, if any, including in the part set apart to the said Henyan lots Nos. 5, 7, 8, 9, 15, 16, and 17 in new city block 2,998, according to the subdivision of said land that has been made by the said Henyan, which lots have been conveyed by him to N. A. Dawson. Said commissioners will set apart the remaining lots to said plaintiffs."

The cost of making the partition was adjudged against the defendant and the plaintiffs who recovered in proportion to their respective interests.

### Conclusions of Fact.

The trial court found from the undisputed evidence, as matters of law, as follows:

That a controversy arose between T. W. Campbell, receiver of the estate of Arthur P. McNutt, and the plaintiffs in this cause and those under whom they claim and Margarita Saldana Martinez and Natividad Garza Martinez, as to ownership of the tracts of land alleged in plaintiffs' third amended original petition to have been occupied and claimed by said plaintiffs and Margarita Saldana Martinez and Natividad Garza Martinez, respectively, and that suits were instituted by said receiver against the plaintiffs Fabiana Sorola, Refugio Lopez, Severo Lopez, now deceased, Petra Arambula, and Victor Quintero to recover the title and possession of certain tracts, which said suits were all pending in the district court of Bexar county, Tex., in and for the Forty-Fifth judicial district of Texas, wherein the receivership of said estate was pending. That on

June 3, 1904, the instrument set forth in plaintiffs' third original petition was executed by the parties whose names are signed thereto as set forth in said petition.

Thereafter, on June 7, 1904, an order was made in said district court consolidating in one cause all of said suits which had been brought by said receiver against said plaintiffs. On the same day the receiver applied to the court for authority to make said compromise agreement in settlement of the litigation, which was granted to him on the same day. And on that date the receiver, by leave of the court, filed his amended petition in said consolidated cause wherein he sought to recover of each and all the defendants in said cause the title and possession of the tract of land described as follows: Lying and being situated within the corporate limits of the city of San Antonio, Bexar county, Tex., and being original city lots Nos. 5, 6, and 7, in range 1, district 3, said property being bounded on the south by Crockett place and on west by McCullough place, on north by an alley, and on the east by Rock Quarry Road.

On the same day I. B. Henyan, the defendant, as attorney for Margarita Saldana Martinez, filed in said consolidated cause an amended answer for her, in which she disclaimed all right, title, and interest in and to the following part of the foregoing described tract of land, to wit: Beginning at the intersection of Crockett place and Gillespie street on the northeast side of Crockett place and running thence north with the east line of Gillespie street to its intersection with an alley on the north of original city lot No. 7; thence west with the north line of original city lot No. 7 to its intersection with McCullough avenue; thence south with the east line of McCullough avenue to the southeast corner of original city lot No. 5; thence east with the north line of Crockett place to the place of beginning as per streets and alleys of the subdivision of said property made by Wm. M. Locke, engineer, in March, 1903, for T. W. Campbell, receiver, and by him dedicated to the public.

And in said amended answer so filed by the said Henyan for the said Margarita Saldana Martinez she sought to recover of the said Campbell, as such receiver, and of all of her codefendants in said consolidated cause, the title and possession of the following portion of said entire tract hereinbefore described, to wit: Beginning at the intersection of the north line of Crockett place with the Rock Quarry Road at the southeast corner of original city lot No. 5; thence west with the north line of Crockett place to its intersection with Gillespie street as platted by said receiver in his subdivision of the original city lots Nos. 5, 6, and 7, range 1, district 3; thence north on the east line of Gillespie street to its intersection with an alley on the north line of original city lot No. 7; thence east on the south line of said alley

to its intersection with the Rock Quarry Road, being the northeast corner of original city lot No. 7; thence south with the west line of the Rock Quarry Road and the east line of original lots Nos. 5, 6, and 7, to the place of beginning.

On said same date the defendant I. B. Henyan filed an amended answer in said consolidated cause as attorney for the balance of the defendants, in which they disclaimed any and all right, title, and interest in and to the entire tract hereinbefore first described.

On said same date a judgment was entered in said consolidated cause by said court, by the terms of which the said receiver recovered of all the defendants in said consolidated cause the title and possession of the following described land situated in San Antonio, Bexar county, Tex., to wit: Beginning at the intersection of Crockett place and Gillespie street on the northeast side of Crockett place; running thence north with the east line of Gillespie street to its intersection with an alley on the north of original city lot No. 7; thence west with the north line of original city lot No. 7 to its intersection with McCullough avenue; thence south with the east line of McCullough avenue to the southeast corner of original city lot No. 5; thence east with the north line of Crockett place to the place of beginning as per streets and alleys of the subdivision of said property made by Wm. M. Locke, engineer, in March, 1903, for T. W. Campbell, receiver, and by him dedicated to the public.

The land adjudged to said receiver embraced the entire tract hereinbefore first described except that portion thereof that the said Margarita Saldana Martinez sought to recover in her said amended original petition in said consolidated cause as hereinbefore described; and, by the terms of said judgment, the said Margarita Saldana Martinez recovered of the said receiver and of all her codefendants the title and possession of the said portion of said entire tract as hereinbefore described that she sought to recover in her said amended original answer. But it was provided that the subdivision of said streets and alleys in the blocks numbered 3, 4, and 7, as made by the said Locke for said receiver, should not be accepted or adopted by the said Margarita Saldana Martinez, but that, as to said blocks, such subdivision and plat should not be binding on her, though in other respects she should adopt said subdivision and plat.

It was provided in said judgment that the defendants in said consolidated cause should recover of said receiver all their costs. Said judgment recited that the parties by their attorneys of record submitted to the court the agreement set forth in plaintiffs' third amended original petition in this cause, which was made a part of the judgment, and that the judgment was based thereon. A plat of the subdivision of the entire tract

hereinbefore first described as made by the said Locke was also made a part of said judgment.

On the same date the said Margarita Saldana Martinez executed to the defendant I. B. Henyan a deed conveying to him all of the land that had been awarded to her by said judgment except five lots; said lots reserved by her being lots Nos. 1, 2, 6, 7, and 8, in block 10, new city block 2,994, according to said plat made by Locke.

Of the five lots reserved by her the said Margarita Saldana Martinez conveyed to Petra Arambula said lots Nos. 1 and 2; and the said Petra Arambula afterwards sold and conveyed said two lots to a person not a party to this suit.

Prior to the rendition of said judgment on, to wit, March 5, 1904, the city of San Antonio filed suit against the said Campbell as receiver of the estate of Arthur P. McNutt, the heirs of Arthur P. McNutt, I. B. Henyan, independent executor of the estate of Natividad G. Martinez, Felix Trevino, Sisto Valdonado, Hejinio Amallo, Manuel Martinez, Gumerindo Haballez, Manuel Lopez, Severo Lopez, Francisco Esparza, Raphael Halibo, Guadalupe Ortiz, Guadalupe Fonseca, Refugia Fonseca, Florencia Flores, Fabiana Sorela, Guadalupe Martinez, Francisco Saldana, Refugio Lopez, Severo Lopez, Natividad G. Martinez, Alberto Garza, ———— Arambula, Petra Arambula, Lina Arambula Quintero, Victor Quintero, and the unknown owners, their heirs or legal representatives, seeking to recover of them the sum of $750.29, taxes alleged to be due said city for the years from 1894 to 1902, inclusive, with interest at the rate of 8 per centum per annum and 10 per centum as penalties and for a foreclosure of the tax lien on the entire tract hereinbefore first described. Of the defendants in said tax suit, Felix Trevino, Manuel Lopez, Severo Lopez, Raphael Olivo (under the name of Raphael Halibo), Guadalupe Ortiz, Refugia Fonseca, Fabiana Sorola (under the name of Fabiana Sorela), Guadalupe Martinez, Francisco Saldana, Refugio Lopez, Alberto Garza, Petra Arambula, Lina Arambula Quintero, and Victor Quintero are plaintiffs in this suit. The person named Hejinio Amallo in said tax suit was the husband of J. Ortiz de Maya, one of the plaintiffs in this suit.

On March 22, 1905, the said Henyan as attorney for Margarita Saldana Martinez filed a plea of intervention in said tax suit for her in which she alleged that she was the owner of all of that part of the land involved in that suit that is involved in this suit; claimed that the said receiver of the McNutt estate was liable for all the taxes sought to be recovered primarily, and sought judgment over against the said receiver for any taxes that she might be compelled to pay on the said land claimed to be owned by her.

On January 9, 1906, a judgment was rendered in said tax suit reciting that the plaintiff therein, the said Margarita Saldana Martinez, and the said receiver appeared, and that the other defendants "although having filed an answer" therein, came not, and adjudging that the said city of San Antonio, plaintiff, recover of Margarita Saldana Martinez the sum of $463.31 as the taxes on said part claimed by her and foreclosing the tax lien on said part of said land, but further adjudging that she take nothing by her plea over against the said receiver.

An order of sale was issued on said judgment, and on the 3d day of April the sheriff of Bexar county sold said land claimed to be owned by the said Margarita Saldana Martinez; and the said Henyan bid the same in, and the said sheriff executed and delivered to the said Henyan a deed purporting to convey to the said Henyan the said land, which deed recited that the said Henyan had bid and paid for said land at said tax sale the sum of $73.50. The return on the order of sale states that the said Henyan bid in the land for said sum of $73.50, and that the land was struck off to him for said price, and recites further that the "taxes and interest having been paid city tax collector." Said sheriff's deed to the said Henyan was filed for record in the office of the county clerk of Bexar county on October 15, 1908.

On the ———— day of ————, 190—, the said Henyan and one M. A. Dawson made a contract in writing, under the terms of which, at diverse and sundry dates, the said Henyan executed and delivered to the said Dawson deeds conveying to the said Dawson out of the land in controversy in this suit lots Nos. 5, 7, 8, 9, 15, 16, and 17, in new city block 2,998, according to a new subdivision of said land that had been made by the said Henyan, and which was placed by him of record in the shape of a plat in the office of the county clerk of Bexar county on December 17, 1908.

While the said Margarita Saldana Martinez and Pantaleon Martinez were living on said land, and long prior to the beginning of the controversy between the parties and the receiver of the McNutt estate, the following children were born unto them, to wit: George Martinez, one of the defendants in this suit; Severa Martinez, who married Guadalupe Martinez; Candelaria Martinez, who married Refugio Lopez; and Matea Martinez, one of the defendants in this suit. Severa Martinez and her husband, Guadalupe Martinez, are both dead, and Paulina, married to Catarino Villareal, both alive, Ygnacio Martinez and Mateo Martinez, one of the minor plaintiffs herein, are the only children and sole heirs of the said Severa Martinez and her husband, Guadalupe Martinez. The said Pantaleon Martinez died long before said controversy arose.

Prior to the institution of the suits by the

said receiver against the plaintiffs herein and Margarita Saldana Martinez, the defendant I. B. Henyan, as the attorney of Natividad Garza Martinez, brought suit in trespass to try title against the said receiver seeking to recover of the said receiver the title and possession of all that part of the tract hereinbefore first described lying west of the Old Tobin Road and south of San Pedro place. During the pendency of the suit, she died leaving a will, which was duly probated, in which she appointed the defendant Henyan as her independent executor without bond and bequeathed all her property to Petra Arambula, provided that her said executor should receive out of her estate whatever might seem to him right and proper as a compensation for his services as such executor. After her death and the probating of said will, the said Henyan made himself a party plaintiff in said suit in her place as such executor.

The said receiver also brought suit against the said Natividad Garza Martinez in trespass to try title for a small part of the land that she was seeking to recover against him.

Prior to the institution of the said suits by the said receiver, the said Margarita Saldana Martinez, the defendant Henyan, acting as her attorney, brought suit in trespass to try title against the said receiver to recover all that part of the tract hereinbefore first described lying east of the Old Tobin Road and south of San Pedro place.

After the rendition of the said judgment in said consolidated cause, the said suit brought against the said receiver was dismissed.

In the said consolidated cause, the said receiver was plaintiff, and I. B. Henyan, as independent executor of the will of Natividad Garza Martinez, Fabiana Sorola, Guadalupe Martinez, Francisco Saldana and his wife, Susana Saldana, Refugio Lopez and his wife, Candelaria Lopez, Severo Lopez, Petra Arambula, Victor Quintero and his wife, Lina Arambula Quintero, Margarita Saldana Martinez, George Martinez, Mateo Martinez, Paulina Martinez, Ygnacio Martinez, and Matea Martinez were defendants.

The following special issues of fact were submitted by the court to the jury, and were each answered as respectively stated after the question:

(1) "At the time the controversy arose between the receiver of the McNutt estate and the plaintiffs in this suit as to the title to the land that was claimed by said receiver for the McNutt heirs, were the plaintiffs in this case actually occupying and claiming the several tracts of land as described in plaintiffs' third amended original petition?" Answer: "They were."

(2) "At the time said controversy arose, was Margarita Saldana Martinez actually occupying and claiming the tract of land as alleged and described in the plaintiffs' third amended original petition?" Answer: "She was."

(3) "Do you or not find from the evidence that prior to the making of the agreement dated June 3, 1904, the defendant Henyan was representing, as their attorney, and seeking to recover for them an interest in the McNutt land, all the plaintiffs in this suit except Felix Trevino, Manuel Casas de Ortiz, Alberto Garza, and Luz Perez?" Answer: "We do."

(4) "Do you or not find from the evidence that when the agreement dated June 3, 1904, was made, and when the decree embodying such agreement was entered, that the defendant I. B. Henyan was representing as their attorney all the plaintiffs in this suit except Felix Trevino, Manuel Casas de Ortiz, Alberto Garza, and Luz Perez?" Answer: "We do."

(5) "Do you or not find from the evidence that the defendant I. B. Henyan represented to the plaintiffs in this suit, other than Felix Trevino, Manuel Casas de Ortiz, Alberto Garza, and Luz Perez, that if they would make or consent to the compromise agreement dated June 3, 1904, that they would receive a part of the land recovered?" Answer: "We do."

(6) "Do you or not find from the evidence that the agreement dated March 3, 1904, was made and the decree embodying said agreement was entered for the use and benefit of all the plaintiffs in this suit, except Felix Trevino, Manuel Casas de Ortiz, Alberto Garza, and Luz Perez?" Answer: "We do."

(7) "Do you or not find from the evidence that the title to a portion of the property sued for was decreed in the name of Margarita Saldana Martinez in trust for the plaintiffs in this suit, except Felix Trevino, Manuel Casas de Ortiz, Alberto Garza, and Luz Perez?" Answer: "We do."

(8) "Do you or not find from the evidence that, when the defendant I. B. Henyan purchased the property at tax sale, he was representing as attorney the plaintiffs in this suit except Felix Trevino, Manuel Casas de Ortiz, Alberto Garzo and Luz Periz?" Answer: "We do."

(9) "Do you or not find from the evidence that the price paid by Henyan for the property at tax sale was a grossly inadequate consideration for the property so purchased?" Answer: "We do."

(10) "Do you or not find from the evidence that the title to a part of the property sued for in this case is now being held by the defendant Henyan in trust for plaintiffs in this suit, except Felix Trevino, Manuel Casas de Ortiz, Alberto Garza, and Luz Perez?" Answer: "We do."

(11) "Do you find from the evidence that Margarita Saldana Martinez was claiming prior to the institution of the suits by and between Campbell, receiver, and the other

parties, only the land that she was actually occupying and using, or all of the land east of the Old Tobin Road?" Answer: "She was claiming only the land that she was actually occupying and using."

(12) "Do you or not find from the evidence that the plaintiffs in this suit, or their ancestors, claimed to own a part of the McNutt land, or were they holding as tenants of Mrs. Margarita Saldana Martinez, Natividad Garza Martinez?" Answer: "They claimed to own a part of the land."

(13) "Before or at the time of the signing of the agreement dated June 3, 1904, did Petra Arambula and Lina Quintero know that they were entitled to recover any of the McNutt land as heirs of their deceased father, Lino Quintero?" Answer: "They did not."

(14) "Do you or not find from the evidence that Lino Quintero, the father of Lina Quintero and Petra Arambula, commenced living on part of the McNutt land prior to Natividad Garza?" Answer: "We do."

(15) "Did Petra Arambula know and understand the contents and purport of the agreement dated June 3, 1904, when she signed the same?" Answer: "She did not."

(16) "Did Lina Quintero know and understand the contents and purport of the agreement dated June 3, 1904, when she signed the same?" Answer: "She did not."

(17) "Did Refugio Lopez know and understand the contents and purport of the agreement dated June 3, 1904, when he signed the same?" Answer: "He did not."

(18) "Did Leonor Lopez know and understand the contents and purport of the agreement dated June 3, 1904, when she signed the same?" Answer: "She did not."

(19) "Did Candelaria Lopez de Martinez know and understand the contents and purport of the agreement dated June 3, 1904, when she signed the same?" Answer: "She did not."

(20) "Do you or not find from the evidence that Margarita Saldana Martinez was either the lawful wife or common-law wife of Pantaleon Martinez?" Answer: "We do."

(21) "Do you or not find from the evidence that Henyan, as representative of some of the claimants to the McNutt land, was to receive as his compensation one-half of the land he recovered?" Answer: "We do."

(22) "Do you find from the evidence that all the plaintiffs did not, prior to four years before the institution of this suit, to wit, January 14, 1909, know that the defendant Henyan was claiming the property involved in this suit as his own?" Answer: "We do."

(23) "What amount of money do you find from the evidence that the defendant Henyan expended on the property involved in this suit, not including the taxes?" Answer: "Eight hundred and fifty dollars."

There is evidence to support the verdict; and we adopt the facts found by it, as well as those which the court below found as matters of law from the undisputed evidence, as our conclusions of fact.

### Conclusions of Law.

For the purpose of assisting the court in considering the numerous assignments of error, appellants' counsel have in their brief, before presenting the assignments, suggested seven separate propositions upon issues they deem vital to and affecting the case as a whole. They are as follows:

"(1) The plaintiffs sue as tenants in common, admitting a half interest in the defendant Henyan to all of the land involved in the suit, and admitting a smaller interest in the defendant Margarita Saldana Martinez in the other half of the land, and each plaintiff admitting an interest in the other. They should therefore have averred and established the specific interest claimed by each of them. This they have failed to do; on the contrary, certain of them failed to recover, and yet the interest of the person so failing to recover is awarded to the plaintiffs and not to the defendants. The allegations, the proof, and the findings of the jury should have determined the rights of all the parties in the land and the extent of the interest of each plaintiff; otherwise no judgment can be entered.

"(2) The proof shows that all parties necessary to a partition are not before the court, and the case should not have proceeded to judgment in their absence.

"(3) Taking the plaintiffs' petition as a whole, it would seem that it is intended to charge either: (a) An express parol trust growing out of an alleged agreement between Margarita Saldana Martinez, Henyan, and the plaintiffs that the land in controversy should be decreed and was decreed in said Margarita in trust for herself, Henyan, and the plaintiffs according to their respective interest in the McNutt lands, and that she was thereafter to convey to each beneficiary his interest in the premises; or (b) that plaintiffs and Margarita Saldana Martinez each claimed and owned, or claimed to own, certain portions of the entire McNutt lands, and that they disclaimed as to these portions in the consolidated cause in order that the land in controversy might be decreed to Margarita, and that Margarita therefore held the same under an implied trust for their benefit in proportion to the extent of their title, or claim, to the McNutt lands; or (c) that Henyan, being their attorney, used their claim or title to secure title to the property in controversy in him whilst he was their attorney, and the same is therefore charged with a constructive trust. There, therefore, necessarily arise the following issues in the case: Was there any express parol trust, and, if so, what were its terms, and were they sufficiently definite for a court of equity to enforce; that is, did the parol trust express the terms of the

trust so definitely that a court of equity could enforce it? And, if the trust was that the land should be held by Margarita to be subsequently divided among the plaintiffs according to their respective interests in the McNutt lands surrendered by them in the agreed decree, does the proof show the extent of such interest, whether it consist of a title to specific portions of the land or to a claim to title to specific portions of the land, and if only a claim, and not a title, the value of such claim, so that the interest which was represented by it in the land in controversy might be fixed and determined by a court of equity. Practically the same questions necessarily arise upon the claim that the trust was implied. If plaintiffs had no title to any of the McNutt lands, then they surrendered nothing when they disclaimed unless their claim of title was a thing of value which entered into the consideration for the decreeing of the land to Margarita, and, if so, the extent of the consideration and the value of same should definitely appear, before a court of equity could enforce such a trust. So, also, if the trust be considered as constructive, the above matters would likewise enter into the consideration of same and the further vital question would have to be considered, viz.: Did Henyan represent the plaintiffs as their attorney for the purpose of protecting any claims that they may have had individually to any of the McNutt lands, or did he, with their consent, represent them merely as formal parties to protect the title of Margarita and Natividad?

"(4) Assuming that Henyan made statements to plaintiffs, were these statements representations of what the plaintiffs would acquire by the agreed decree if they agreed to same, or were they merely promises upon his part to do something for the plaintiffs in the way of conveying them property, which promises he subsequently breached?

"(5) If the agreed decree was entered into by Margarita Saldana Martinez with the understanding that the whole of the premises were to be awarded to her and without any agreement upon her part that she would hold same in trust for any of the plaintiffs and title vested in her unaffected by any trust in favor of any of the plaintiffs, and Henyan thereafter bought from her the title so decreed to her, would the title thus acquired by her be affected by a trust under the other facts in the case in the hands of Henyan?

"(6) After Henyan had acquired title to the property, no parol agreement made by him to hold same for any of the plaintiffs or convey any portion of same to any of the plaintiffs is competent to establish a trust.

"(7) Plaintiffs admitted, by the allegations in their pleading, the ownership of each of the plaintiffs to an interest in the land in controversy, proportionate to the claim of each plaintiff to an interest in the entire McNutt lands. As to such of the plaintiffs as did not recover, the other plaintiffs would not be entitled to recover such interest. The case was tried upon the issue, however, that, if any of the plaintiffs were entitled to recover, they could recover an undivided half interest in the land. This evidently upon the assumption that Henyan had no interest except a half interest to which he became entitled under his employment as attorney, and that a failure of any of the plaintiffs to show title as against him to the other half interest operated only to give to the remaining plaintiffs an additional interest in the land, so that the case is left in practically this situation: A., B., C., D., E., and F. have sued to establish an interest in the land in controversy, the interest of each to be measured by his claim in the entire McNutt tract. A., B., and C. fail to show any interest in the McNutt lands entitling them to an interest in the land in controversy. D., E., and F. recover upon findings that they have an interest in the land in controversy proportionate to the interest claimed by them in the entire McNutt land, and upon this finding they are decreed the asserted interest of A., B., and C. and which is as to them an admitted interest in A., B. and C."

This method of presenting issues is a wide departure from the rules prescribed for briefing causes on appeal, and propositions advanced in this manner should not ordinarily be considered. But desperate cases require extraordinary remedies. And, as the propositions thus advanced disclose at a glance appellants' theory of the case, we have concluded that it will not be entirely inappropriate in this instance for us to avail ourselves of the assistance so kindly tendered in this manner by counsel.

[1] (1) While the first proposition is specious, we think it is based upon a false assumption. The plaintiffs do not sue as tenants in common, but upon equitable grounds to establish such tenancy. The interest they originally claimed in the land, which some of them employed Henyan as their attorney to protect, was not held by them in such tenancy, but in severalty. There was no *unity* of *possession* or of title among them. Each occupied, and claimed for himself exclusive ownership, a certain designated part of the land. And each, according to the verdict, employed Henyan to defend his title to and protect him in his possession in the portion he was occupying and claiming as his own. Henyan's obligation was not to defend them as tenants in common, but as owners of designated parts of the land in severalty. In the judgment in the consolidated case, where plaintiffs' several interests in the land were involved, those parts designated and claimed by each of them in severalty were adjudged to the receiver of the McNutt heirs and set aside to him; and a certain part of the entire tract composed of the three original city lots were adjudged and set

aside to the appellants who were appellees' codefendants in the consolidated case. The legal title to the lion's share of that part was, within a short time afterwards, acquired by Henyan. Now the plaintiffs claim that, by reason of the facts alleged in their third amended original petition, after allowing their said attorney one-half as a fee for his services, they are entitled to recover from him the remainder of the land to which he holds the legal title so acquired. It is seen from this that the plaintiffs do not sue as tenants in common, but for the purpose of obtaining an equitable decree, the effect of which will make them such tenants in a certain part of the land. In the proposition, the appellants' counsel have simply reversed the logical order of things and have substituted the conclusion to be deduced from the matters pleaded and proved for their major premise in the syllogism.

(2) We fail to perceive any proof which shows that any parties necessary to a partition of the land to which plaintiffs seek to have decreed the equitable title were not before the court. The defendants, whose legal as well as equitable title to a part of the land involved was admitted by the plaintiffs, were before the court; and all the parties who were shown to have the right to have an equitable title to a part of the land decreed in them were before the court as parties plaintiff. The latter parties did not desire the portion they might show themselves entitled to partitioned among themselves, but asked that land, to the extent of their interest, be parted from the interest which the defendants had in the tract so that they might hold theirs in common until such time as they should see fit to divide it among them in proportion to each one's interest. If there were any one else entitled to a share, we are unable to perceive from the record who he is.

[2] (3) If this be taken as a correct analysis of plaintiffs' third amended original petition, it would seem that plaintiffs were entitled to recover on any one of the three theories advanced by the proposition, without regard to whether the evidence would sustain an action on the others. As it is apparent from the facts shown by the undisputed evidence, coupled with those found by the jury, that the recovery was had upon the theory that the defendant Henyan held the property to which he acquired the legal title through the judgment rendered in the consolidated case, in which he was appellees' attorney, charged with a trust—arising from the relation of attorney and client—in favor of appellees, it can make no difference whether either of the other theories would sustain an action, even if proved. In this view, it is a matter of no moment whether the appellees, or any of them to whom Henyan bore the relation of an attorney, charged with the duty of representing them and protecting their interest in such litigation, had title superior to McNutt's heirs in any of the land or not. They were each in possession of a designated part of the land, claiming the part he was occupying as his own adversely to the receiver of the estate of said heirs. It was Henyan's duty, as their attorney, to protect each of them in his adverse claim; for when he became an attorney at law he swore he would "discharge his duty to his client to the best of his ability." He never presented the question as to the validity of their claim for judicial determination. Presumably he regarded it as a doubtful issue, and therefore compromised it with the receiver of said heirs. In accordance with the compromise, a judgment was entered. He acquired under the compromise judgment a large part of the land, to which he would have no right whatever, but for said judgment. Each of appellees' claims to his respective part of the land was embraced in this compromise and was merged by the judgment in that part of the land which Henyan acquired under it. Therefore he is estopped from claiming that appellees had no title to the several parts claimed by each, and from saying that he should not be charged as trustee with any interest in the land he has thus acquired.

[3] (4) The statements made by Henyan to plaintiffs must be considered as made by an attorney to his clients, and not as palterings in a double sense, but as true declarations of what he intended to do for them in the case wherein he was employed to represent them. If he stated that they should have a part of the land acquired by the compromise, he should be held to it as a sacred obligation to his clients. And, since he has acquired the land under the compromise, he cannot be permitted to repudiate such obligation, under the guise that it was merely a promise which he subsequently breached, and by such subterfuge leave his clients only a barred action for damages, instead of the land that is theirs under his obligation.

[4] (5) The evidence wholly fails to show that the agreed decree was entered into by Margarita with any such understanding as is suggested by this proposition. If there was any understanding that the premises were to be awarded her by the judgment, it was Henyan's. The evidence shows that he had the decree so entered for the purpose of overreaching appellees, who were his clients, and obtaining through it title to the part of the land which they are equitably entitled to as their own.

[5] (6) If anything can be regarded as settled law in this state, it is that an agreement to acquire land is not within the statute of frauds. The case of Allen v. Allen, 101 Tex. 362, 107 S. W. 528, cited by counsel to sustain this proposition, does not contravene this principle. There the agreement was by a party, who had already acquired the property, to convey it upon a certain consideration to another. The agreement being

in parol, and the consideration not having been paid, it was properly held that no trust resulted in favor of the latter party.

Here we have an agreement or understanding between an attorney and his clients that he should represent them in certain suits involving title to certain lands occupied and claimed by them, and that he, in consideration for his services to be performed in the matter, should have half the land he should recover. By and through a compromise of the suit he acquired a certain part of the premises in controversy; and showed himself more diligent than Horace Greeley's western attorney, retained on a contingent fee of half the proceeds of a note he undertook to collect, who, upon collecting half of it, wrote to his client, "I have collected my half, but the old galoot won't pay your half." In this case the attorney has acquired his half, as well as his clients', and now compels them to whistle through all the mazy corridors of the law for their half.

[6] Equity imposes upon the attorney a trust, arising from his duty to his clients, of holding his clients' interest in the land for them, and will enforce the trust by decreeing the equitable title in them and compel him to convey it to them, if he attempts to repudiate the trust and disregard his duty as trustee. His duty as such trustee does not rest upon any kind of agreement, but upon good conscience and sound equitable principles.

[7] (7) This proposition pushes sophism to its farthest limit; but its fallacy is as obvious as that apparent in the first. If the plaintiffs sued to recover severally the specific interest in the tract composed of the three original lots which each claimed as against the McNutt heirs, the failure of one to recover his interest would not inure to the others, but would as effectively, as between them and defendants, vest title in the latter as though judgment had been expressly rendered in their favor for that part of the land claimed by such defendant as failed to prove his title. But such, as we have seen, is not this case. Here all the plaintiffs sue to establish a tenancy in common or joint ownership with Henyan in that part of such tract as was acquired by him under the compromise judgment. Henyan's cotenancy in common with them as to half of the land he holds under the judgment is admitted; but facts are alleged which, if true, show that he in equity is not entitled to more, and that such of the plaintiffs as he represented in the case in which the compromise judgment was rendered are entitled to the other moiety and as to it are tenants in common with him. He was only enabled to obtain the compromise judgment under which he holds through a contract with plaintiffs which entitled him to an undivided half and them to an undivided interest in the remainder. If, then, any of plaintiffs on this theory established their cotenancy, though some did not, those who did would be tenants in common with Henyan to the extent of half the land so acquired by him; and, if he obtained his half interest, it can be a matter of no moment to him how their half interest is apportioned among themselves. Instead of the situation presented in the proposition, this is the real situation: A., B., C., D., E., and F. sue to establish an equitable interest in a tract of land to which the legal title is in H., whom they concede to be also the equitable owner of an undivided one-half interest in it. A. and B. fail to prove that they were parties to the contract with H., which entitles him to a half interest in the land he holds under the judgment, and the other parties to such contract to an interest in the other moiety. C., D., E., and F. show that they were parties to such contract. Therefore, when H. obtained the compromise judgment and acquired the legal title to the land recovered by it, he was entitled by virtue of the contract to an undivided one half interest in it, and C., D., E., and F. to the other half interest as tenants in common with H.; they having the equitable title which he held in trust for them. But A. nor B., not parties to the contract from which the interest of C., D., E., and F.'s equitable interest arose, could not recover, but their failure did not affect the rights of those who were parties to the contract whose rights arose under the judgment upon H.'s obtaining the legal title to the land recovered; nor did such failure entitle H. to more than the interest C., D., E., and F. contracted to give him for his services. For, when a number of parties sue to establish a joint tenancy or ownership in land, the failure of some of them to maintain their action does not affect the rights of those who do, nor prevent their obtaining judgment for all in whom such joint tenancy or ownership in common is shown to the extent of the entire premises in controversy.

If there be anything asserted in any of the seven propositions thus disposed of not properly covered by an assignment of error, what we have said in considering them should not be taken as applicable to the case, for we are limited on appeal to the consideration of such questions as are assigned as error and presented by propositions under the respective assignments in accordance with the rules of this court.

This brings us to the several assignments of error. In considering them we shall state as clearly as may be the principles of equity which shall govern us in disposing of them and cite such authorities as are accessible in support of our rulings. For the sake of brevity, we shall endeavor to group such assignments as are related and consider and dispose of them together. Those which have, in effect, been disposed of by what has been said in passing upon the foregoing independent propositions will be indicated, and little else may be said in their consideration.

1. The first and second assignments of error complain of the court's overruling appellants' general and special exceptions to plaintiffs' third amended original petition. We need only refer to the statement of the case to show the purport of the special exception; and, as it involves every question that can be urged under the general one, what will be said in disposing of it will apply equally to the other.

[8] It was not essential to the establishment and recovery of appellees' equitable interest in the land that they should allege and prove that Margarita Saldana Martinez ever agreed that the property should be set aside to her to be held in trust for any of them. Trusts in invitum are not dependent upon agreement or expressions of a party upon whom they are impressed for their creation, but arise from those sound, equitable principles "whose seat is the bosom of God and whose voice is the harmony of the Universe." By the agreed judgment Margarita obtained the legal title to land which was not hers, and to which she had no shadow of title nor ever claimed. This she in effect conceded when she conveyed practically all the land adjudged her to her attorney in consideration of his services in the consolidated case in which she and appellees were adverse parties to the receiver of the McNutt heirs, in which that attorney, who was I. B. Henyan, who represented the appellees as well as her. Nor can it make any difference what her intentions were in making the conveyance, whether to enable Henyan to defraud the appellees of their interest or to perform his sacred duty as their attorney by conveying them their interest in the land, for, regardless of her intentions, equity would charge him as a trustee to the extent of their interest in the land to which he obtained the legal title by virtue of her deed to him. Had she never deeded it to him, equity would have fastened the trust upon him to the extent of appellees' interest. And, having conveyed to him, who had full knowledge of their interest in the premises, the effect of the conveyance was simply, to the extent of their interest, to make him their trustee regardless of whether he intended to hold title to such interest in subordination to such trust, or to ignore his relation to them as their trustee and defraud them of their interest in the land. Equity has a searchlight that penetrates the innermost depths of the human soul and reads its most hidden intent as though its eye were divine. When it sees the intent is fraudulent, it, with a sigh for human frailty, brushes it aside and substitutes in its stead the intention of honesty and fair dealing, and with its strong, though gentle, hand compels its performance.

[9] The assertion that, "As Henyan owned the title, when he purchased at the tax foreclosure sale he had the right to make such purchase, and no trust arose out of same in favor of any of the plaintiffs," is fallacious, in that it assumes he had title at that time. Whereas, his was then the legal title charged with a trust in favor of appellees to the extent of their equitable interest in the premises, making them in effect his tenants in common. The rule is that, when one tenant in common clears land of an incumbrance by purchase at tax sale, it inures to the benefit of his cotenants as well as his own.

[10] Besides, Henyan was the attorney and agent of appellees, and the rule in equity is that an agent is disabled from dealing with the subject-matter of his agency on his own account. Satterthwaite v. Loomis, 81 Tex. 64, 16 S. W. 616.

[11] Nor was it necessary that Campbell, receiver, should have consented to the agreed decree with the understanding that, if the property was awarded to Margarita, it was charged with a trust in favor of appellees, in order to charge her with such trust in their favor. This was a matter which did not in the least concern the receiver, for he would in no wise be responsible for the effect of such decree as between Margarita and the other parties at interest with her, nor in its construction by a court of equity in view of such facts as were alleged and proved in this case. Nor would Margarita's being charged as trustee for appellees' interest in the land decreed in any way affect his title as receiver to the land allotted him by such decree. It was, as between him and the adverse parties in the consolidated case, a final adjudication as to the matters in controversy, extinguishing and barring forever whatever right any of them had in that part of the premises awarded him.

[12] Inasmuch as the appellees never sued Henyan to recover damages as for breach of contract, it was not essential to their recovery in this action that they should either allege or prove damages sustained by them on that account.

The contention under these assignments that, as plaintiffs sue as cotenants of defendants, their failure to the extent of their interest in the land renders their petition obnoxious to these exceptions, has, we think, been sufficiently answered in what we have said in disposing of those seven propositions urged by appellants before reaching the assignments of error in briefing this case. Reference to appellees' third amended original petition, which is embodied in the statement of the case, will show that they described by metes and bounds the land occupied and claimed by each of them of the McNutt lands; averred their contract with Henyan as an attorney at law to defend each of them was in his claim to the land described; the compromise agreement made by Henyan, as their attorney, with the receiver under which a designated part of the entire tract was to be set aside to the receiver and a designated part to Margarita; that Henyan procured

137 S.W.—31

their assent to the compromise agreement by representing that each of them who had employed him should have his proportionate share out of the portion to be set apart to Margarita; that judgment was entered in accordance with the agreement; that neither had received his share as Henyan represented he should; and that Henyan had acquired, in fraud of their rights, from Margarita—to whom the land out of which they were to have their several shares allotted to them had been decreed under the compromise agreement—the greater part of the land so awarded. Such allegations, when taken in connection with other matters alleged, are sufficient, if proved, to entitle them to have their share of the land set aside to them in this action. It can make no difference, as between them and appellants, whether the petition shows the exact quantity each appellee is entitled to have allotted him, if the aggregate amount awarded does not exceed the interest of all. This is a matter which concerns appellees only and may be determined among themselves. If they want to hold their shares as cotenants, or parcel them by agreement among themselves, it is their affair in which appellants have no concern. It is apparent from the record that the land decreed the appellees does not exceed their joint share in the land awarded Margarita in the compromise decree.

Now as to the equitable principles which entitle them to recover:

[13] The relation of attorney and client is one of special trust and confidence, and the law requires that all dealings between them shall be characterized by the utmost fairness and good faith. Owing to this confidential relation, the courts closely scrutinize all transactions by which an attorney acquires the subject-matter of his retainer of pending litigation. It is not necessary for the client to show improper influence on the part of the attorney in order to establish the invalidity of such acquisition, for it will be presumed from the relation of attorney and client. When the attorney does not offer any proof to establish the good faith of the transaction, it is unnecessary, in order to set it aside, to find fraud or bad faith in the transaction. Nor will any presumption of innocence or improbability of wrongdoing be indulged in the attorney's favor. But the burden of proof is upon the attorney, and, if he cannot produce evidence which puts the transaction beyond reasonable controversy, it will be set aside, or he will be regarded as a trustee for his client. Legal Ethics (Warvelle) § 253; Mechem, Agency, § 877; Perry on Trusts, § 202; Crocheron v. Savage, 75 N. J. Eq. 589, 73 Atl. 33, 23 L. R. A. (N. S.) 679. Here the appellant Henyan so dealt with the subject-matter in litigation as to acquire what his clients were, under the evidence and facts, equitably entitled to receive under the compromise judgment. Hence, under the authorities cited, he should be held as their trustee.

[14] Nor could he divest himself of the trust, thus raised and constructed on sound equitable principles, by buying in the land at tax sale. Mechem's Agency, § 878; Mackay v. Martin, 26 Tex. 57, 80 Am. Dec. 641; Hendrix v. Nunn, 46 Tex. 141; Thomas v. Morrison, 46 S. W. 46; 4 Cyc. 958. Appellees' third amended petition alleges such facts, and therefore we overrule the assignments attacking its sufficiency.

2. Since our conclusions of fact, founded on the undisputed evidence and the verdict, show appellees' right to recover their interest in the land, we overrule appellants' third, fourth, and twenty-sixth assignments, which complain of the court's refusal of special charges peremptorily instructing a verdict for the defendants.

[15] 3. The fifth and sixth assignments of error complain of the court's submitting the case on special issues to the jury. Its submission in this manner was requested by the appellees. Upon such request being made, the court was authorized, if not enjoined, by statute to submit the case in accordance with the request. The objection, that this manner of submitting a case "leaves to the determination of the court the effect of the particular facts found by the jury when the effect of such facts and conclusion of their meaning were for the determination of the jury," might have been addressed to the Legislature; but it cannot be entertained by the courts. But we will say that ever since equity first shed its light upon the law, softened its rigid rules, and remoulded them in accordance with the eternal principles of justice which flow from righteousness and good conscience, it has been the practice in our courts to have issues of fact submitted to a jury and, when determined, to decide their legal or equitable effect, in connection with the admitted or uncontroverted facts, upon the whole case. This is exactly what was done—and well done—by the trial court. A higher tribute to the learning and ability of a judge, or to our judicial procedure, than the manner in which this case was tried—resulting in the resurrection of buried justice—cannot be found in the annals of our jurisprudence.

[16] 4. The seventh assignment complains that, inasmuch as it developed upon the trial of the case that after Henyan acquired the property he subdivided it into lots, blocks, streets, and alleys, and dedicated such streets and alleys to the public, the court erred in further proceeding with the trial of the case after it was thus disclosed that the city of San Antonio has an interest in the property to the extent of the streets and alleys so dedicated.

The appellees did not seek to disturb the

city of San Antonio in its right to the streets and alleys so dedicated by Henyan, but recognized in their pleadings the subdivision so made by him, and in their brief, filed in this case, declare that they do not seek any relief against said city. This would estop them from ever claiming adversely to the city as to the ground dedicated to the city occupied by such streets and alleys.

[17] But, aside from the matter of estoppel, a public easement in land which is the subject of litigation between individual parties is not involved in the suit, unless expressly brought into it by the parties. Therefore, as the city was not a necessary party to the litigation, it was the duty of the court to proceed with the trial regardless of the public's interest in the streets and alleys.

5. Since the street railway was built along one of the streets running through the property dedicated by Henyan, to which appellees assert no title as against the city, the owner of such railway was not a necessary party to this suit. Therefore it was not error for the court to proceed with the trial of the case after it developed that the street railway was there, as is complained by the ninth assignment.

[18] 6. The appellees asserted no claim to that part of the land which Henyan conveyed to Dawson, but treated it as severed by such conveyance from the tract in which they sought to establish their interest, recognizing Dawson's title to the land and charging it to Henyan's share. Therefore Dawson's interest was not affected, and the case properly proceeded to trial without his being made a party. Cotton v. Coit, 88 Tex. 414, 31 S. W. 1061.

[19] 7. The tenth, thirteenth, and fourteenth assignments will be considered together. They have in effect already been disposed of by what has been said in the fourth paragraph of these conclusions. There it is held that the case was not taken from the jury, but was properly submitted on special issues involving all the disputed questions of facts; and that, in submitting a case in this manner, facts shown as a matter of law by the undisputed evidence should not be submitted as issues. If there was any matter which appellants deemed an issue of fact, they should have by a proper charge requested its submission; and, having failed to make such request, they cannot complain on appeal that such an issue was not submitted. Breneman v. Mayer, 24 Tex. Civ. App. 164, 58 S. W. 725; Johnston v. Fraser, 92 S. W. 49; Edelstein v. Brown, 95 S. W. 1126; Bridgeport Coal Co. v. Wise County Coal Co., 44 Tex. Civ. App. 369, 99 S. W. 409; Mabry v. Lumber Co., 47 Tex. Civ. App. 443, 105 S. W. 1156; Mabry v. Kennedy, 49 Tex. Civ. App. 45, 108 S. W. 176; Hahl v. Southland Immigration Association, 116 S. W. 834.

8. What we have said in disposing of the seven propositions advanced by appellants prefatory to the presentation of the assignments of error, in addition to the principles of law announced by us under the first and second assignments, effectually disposes of the 15th, 16th, 17th, 19th, 20th, 21st, 22d, 23d, 26th, 27th, 28th, 31st, 32d, 33d, and 34th assignments of error, which complain of the court's refusing to submit certain special issues which are the subject of the respective assignments mentioned.

[20] It is only such matter of fact as in some way tends either to establish plaintiff's cause of action, defeat it, or establish his adversary's defense, that is required to be submitted as an issue to the jury. If not an essential element in a judgment in favor of one party or the other, the failure to submit it as an issue cannot effect its reversal. Its submission in a general charge might require a reversal; for in such event it might be difficult to ascertain whether or not the jury was influenced in their finding by a false issue presented in the charge. Besides, it might confuse the jury in its finding on the material issue. But where, as in this case, the cause is submitted on special issues, and the court rendered judgment on such facts as are only essential to its validity, its submission can have no such effect.

[21] And where plaintiff's pleadings present several theories on either of which, if established, he is entitled to recover, and it is manifest from the undisputed facts and such as are embraced in the verdict that the judgment rendered was had upon one of the several theories, which is fully sustained by the facts, the failure of the court to submit issues which pertain only to the other theory affords no ground for the reversal of such judgment.

9. The 37th, 38th, 39th, 40th, 41st, 42d, 43d, 44th, 45th, 46th, 47th, 48th, 49th, 50th, 51st, 52d, 53d, 54th, and 64th assignments complain of the court's submitting special issues Nos. 1 to 19, inclusive, and No. 23. Each and every one of these issues were raised by the pleadings and the evidence, and their determination by the jury was in connection with the facts shown by the undisputed evidence to be absolutely decisive of the case, and that the court did not err in submitting any of them, we think, is fully demonstrated by what we have said in disposing of preceding assignments, especially the 5th and 6th. We therefore overrule them all. This also disposes of the 75th, 77th, 78th, 79th, 80th, 81st, 82d, 83d, 84th, 85th, 86th, 87th, 88th, 89th, 90th, 91st, 92d, 93d, 103d, 104th, 105th, 106th, 107th, 108th, 109th, 110th, 111th, 112th, 114th, 115th, 116th, 117th, 120th, 121st, 122d, 123d, 124th, 125th, 126th, 127th, 128th, 129th, 130th, 131st, 132d, 133d, 134th, and 135th assignments of error.

10. As the finding of the jury on all these issues, in connection with the undisputed

facts was, in effect, to require a judgment in favor of appellees, the court did not err in refusing appellants' motion to render judgment in their favor upon the finding of the jury upon them, as is complained of in the 66th, 67th, 68th, 69th, and 70th assignments of error.

[22] 11. The 140th assignment complains that the court erred in rendering judgment in favor of plaintiffs Ignacia Martinez and Mateo Martinez upon the ground that they had inherited through their grandfather, Pantaleon Martinez, a part of the land in controversy when the undisputed facts in the case show that the said Pantaleon Martinez and Margarita Saldana Martinez went into possession of the property in controversy in 1868, and the said Pantaleon Martinez died in 1871, and at the date of his death neither he nor Margarita Saldana Martinez had acquired any title to the property by limitation. As we have observed before, under our view of the case it can make no difference whether these plaintiffs established title either by limitation or any other manner as against the heirs of Mc-Nutt's estate, for Henyan, having undertaken to represent them in the cases wherein they claimed property adversely to such heirs and having by a compromise of the case acquired property in lieu thereof, which property they now claim, by disposing of their interest through such compromise, is now estopped from claiming that they had no title. Besides, it may be doubted, under the holding of the Supreme Court in McCord v. Nabours, 101 Tex. 494, 109 S. W. 913, 111 S. W. 144, in view of the facts in this case, whether the acquisition of title to the property under the ten-year statute of limitation was not by these plaintiffs rather than by Margarita Saldana Martinez.

12. It is contended under the 141st and 142d assignments of error that the court erred in fixing in said judgment the interest of Margarita in the land in controversy for the reason that there was no finding that she held title to any of it by limitation prior to the agreed compromise judgment rendered in the consolidated case before referred to. Margarita, having obtained a judgment upon the ground that she and her codefendants in the case had acquired title to their respective interests in the tract composed of the three surveys under and by virtue of the statute of limitations, cannot now be heard to say that she had no title to any of the land until the judgment was rendered. It is entirely immaterial whether she had title anterior to that time or not, and it was not necessary that such an issue should, in this case, have been submitted to the finding of a jury.

13. It may be doubted whether appellants' 143d assignment of error, which complains of the court's decreeing a partition of the property, is entitled, under the rules of this court, to a consideration. It is in itself pre-

sented as a proposition, and one other proposition is advanced under it, and each embraces several distinct issues. Railway Co. v. Wood, 41 Tex. Civ. App. 226, 92 S. W. 259; Western Union v. Bell, 42 Tex. Civ. App. 462, 92 S. W. 1036; Poland v. Porter, 44 Tex. Civ. App. 334, 98 S. W. 214; Reeves v. Railway Co., 44 Tex. Civ. App. 352, 98 S. W. 929; Cockrill v. Egger, 99 S. W. 568; Storms v. Mundy, 46 Tex. Civ. App. 88, 101 S. W. 258.

[23] If, however, it can be considered, we think it is fully answered by appellees' counter proposition, which is: "The petition of appellees having alleged all the facts necessary to make the extent of the interest of each of the parties to this suit in the land in controversy certain, and nothing remaining to be done except mere measurement and mathematical calculation, and the jury having found the facts so alleged to be true, there was no error in the judgment of the trial court in directing the commissioners of partition to make these measurements and this calculation, and to partition the land in controversy in accordance with such measurement and calculation between Henyan on the one side and appellees on the other." This disposes of the 144th assignment as well.

[24] 14. There was no error in the court's authorizing the commissioners of partition to take into consideration the value of the property in apportioning it between appellants on the one side and appellees on the other. If appellants deemed it necessary that the value of the property to be partitioned should have been ascertained by the jury, it was incumbent upon them to request the court to submit the question by a special issue, and, having failed to do so, they cannot now complain of its not being submitted. Steger v. Barrett, 124 S. W. 174; Sullivan v. Fant, 51 Tex. Civ. App. 6, 110 S. W. 507. We therefore overrule the 145th and 146th assignments of error.

[25] 15. The 147th assignment of error, which is presented as a proposition in itself and is not followed by a proposition, is argumentative and contains several separate and distinct issues and is, therefore, not entitled to consideration. We will observe, however, that every point sought to be raised by it has been determined, adversely to the contention of appellants, in what we have said in disposing of previous assignments of error.

[26] 16. The 148th, 149th, 150th, and 155th assignments are as far from being such propositions as are contemplated by the rules of this court as anything expressed in words well can be. Besides, neither is followed by such a statement as is required by rule 31 of this court (67 S. W. xvi). G., C. & S. F. Ry. Co. v. St. John, 88 S. W. 297; Poland v. Porter, 44 Tex. Civ. App. 334, 98 S. W. 215; Scanlon v. G., H. & S. A. Ry. Co., 45

Tex. Civ. App. 345, 100 S. W. 982; Young v. Pecos County, 46 Tex. Civ. App. 319, 101 S. W. 1057; M., K. & T. R. R. Co. v. Blachley, 50 Tex. Civ. App. 141, 109 S. W. 995. They will, therefore, not be considered.

17. Neither do we think that the 156th assignment can be considered as a proposition. But we believe that the testimony, which appellants complain of the court's refusal to sustain their motion to strike out, was admissible in explanation of the conduct of certain of the appellees in moving off of the several portions of land which they occupied and claimed prior to the compromise agreement, in that it tended to show that their action in doing so was not an admission on their part that they had no interest in such land as is contended by appellants such conduct of appellees showed.

[27] However, it appears from the record that the court did withdraw from the jury the testimony complained of by the assignment.

18. Neither the 157th, the 159th, nor the 160th assignment, each of which is presented in appellants' brief as a proposition, is such as is contemplated by the rules of this court, and will not be considered.

19. The questions raised by the remaining assignments of error have already been considered and disposed of in what we have said in passing upon other assignments of error.

There is no error in the judgment, and it is affirmed.

## On Motion for Rehearing.

[28] Appellants' motion for rehearing raises no question that has not been fully considered and decided in the original opinion, save, perhaps, the question presented in this motion under the 142d assignment, which complains that it was fundamental error not to allow him anything for the taxes paid on the land in controversy. The uncontroverted evidence shows that, while he occupied the relation of attorney towards appellees, in his endeavor to overreach and defraud them of their interest in the land which it was his sacred duty to protect, he paid the taxes, not for them, but sought, through the medium of such payment, to acquire title to all their interest in the land and to hold it adversely to them. Convicted of this fraud by the verdict of the jury, he now says to a court of justice: "You erred in not compelling my clients to pay me money which I used in my effort to defraud them out of the interest in property which it was my duty, as their attorney, to protect them in." Courts of conscience will do no such thing.

Motion overruled.